[No. H033386. Sixth Dist. Feb. 24, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO RENEE PEREZ, Defendant and Appellant.

## Counsel

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Jeffrey M. Laurence, John R. Vance, Jr., and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUFFY, J.**—A jury convicted defendant, Mario Renee Perez, of three sex offenses, each involving a different victim. He claims that the statute of limitations barred his prosecution on two of the three charges. He also claims that there was insufficient evidence to sustain the judgment as to one of his convictions and that evidence of child sexual abuse accommodation syndrome is generally inadmissible. Finding that recent California Supreme Court decisions compel rejection of his limitations claim and that his other claims lack merit, we will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

#### I.   *Convictions and Sentence*

An information charged defendant with four counts of committing a lewd or lascivious act on a child by force or fear in violation of Penal Code section 288, subdivision (b)(1).[1] Each of the four charges named a different victim. The information alleged with regard to each count that defendant fell under the alternative, and more severe, punishment scheme set forth in the "One Strike" law (§ 667.61, subds. (b), (e)).

Of importance to defendant's appeal, the information alleged, with regard to counts 1 and 4, that defendant violated section 288, subdivision (b)(1), between January 1, 1995, and September 1, 1996.

A jury convicted defendant on counts 1, 2, and 4, and found true the section 667.61 allegation appurtenant to each count. The jury found defendant not guilty on count 3 and not guilty on one lesser included offense to count 3, but could not agree on his guilt regarding another lesser included offense to that count. The court dismissed prosecution for the unresolved lesser included offense to count 3 in the interests of justice. Defendant received a sentence of 45 years to life in state prison.

#### II.   *Facts*

##### A.   *Count 1*

The victim in count 1 lived in a San Jose apartment with her father and defendant. One day, when the victim was five or six years old, defendant rubbed the victim's vagina over her clothes. The victim was scared and felt

---

[1] All further statutory references are to the Penal Code.

"weird and awkward." Similar behavior occurred several times. On one occasion defendant gave the victim a look that she interpreted as a warning not to resist by moving.

### B. *Count 2*

Count 2 involved a different victim. Defendant was living with the victim's grandmother and the victim, a girl who was approximately nine or 10 years old. The victim and defendant were alone at home when she entered the adult couple's bedroom. She took or prepared to take some spare change that was in or on a desk in the bedroom and told defendant not to tell on her.[2] He replied that he would not do so but, in exchange, he asked her to perform sexual acts for him. He drew the blinds and asked her to get on top of him and kiss his neck. The victim was reluctant, but defendant persisted and warned her that he would tell her grandmother about the money if she did not comply. She feared being reported and acceded to his request, but without wanting to. The activity made her feel "[w]eird" and she answered "[y]es" when the prosecutor asked if she was "scared" at the time. She straddled defendant and kissed his neck. At some point defendant got on top of the victim, but the victim's trial testimony and prior statements provided no details regarding this act. The episode ended when the victim went to her own bedroom and went to sleep.

### C. *Count 4*

Count 4 involved yet another different victim, the sister of the victim in count 1. Like her sister, she lived in the same apartment as defendant. When she was eight or nine years old, defendant would wink and throw kisses to her. Once, when she and defendant were alone, he inserted a hand inside her pants and fondled her genital area. He also touched her breasts. He warned her that if she told her father, who also lived in the apartment, he would kill him. He engaged in skin-to-skin breast contact on numerous occasions and would kiss her on the face, saying "*mi amore* [*sic*]" as the victim tried to fend him off. He placed her hand on his penis once. He would masturbate in front of the victim and her sister, the victim in count 1. He gave her a back rub on one occasion that she interpreted as sexual. The victim would regularly resist both physically and verbally but defendant would

---

[2] The testimony about the money came from the victim's acknowledgment at trial of a prior description she made of these events and testimony by a police officer who had taken the victim's statement regarding them. At trial the victim testified that she had lied to the officer; denied stealing money from the bedroom, testifying that she entered the bedroom only to obtain a pencil; and denied or could not remember aspects of her interaction with defendant on that occasion, particularly certain aspects of a sexual nature.

overpower her. Defendant's conduct "would make me feel uncomfortable and ugly, like it was my fault."[3]

## DISCUSSION

### I. Statute of Limitations

Counts 1 and 4 charged defendant with violations of section 288, subdivision (b)(1), resulting from acts alleged to have occurred "on or about and between" January 1, 1995, and September 1, 1996—or, in the case of count 1, possibly between January 1, 1995, and October 1, 1996.

Defendant demurred to the information on the basis that these charges were outside the statute of limitations. The prosecution responded that because defendant was charged under the One Strike law (§ 667.61) and thus subject to a sentence of life imprisonment, the charges were authorized by section 799 and were not stale.

The trial court ruled against defendant. It explained: "The issue this [c]ourt must decide is more narrow than whether [section] 667.61, in its entirety, is an 'enhancement' or an 'alternate penalty.' Instead the issue is only whether subdivisions (b) and (e)(5) of [section] 667.61, when operating together, amount to an 'enhancement' or an 'alternate penalty.' While other portions of [section] 667.61 are analogous to the three strikes law and may not extend the statute of limitations under the reasoning of *People v. Turner* (2005) 134 Cal.App.4th 1591 [36 Cal.Rptr.3d 888], the specific [section] 667.61 allegation in this case is more analogous to what is essentially a substantive offense . . . . As charged here, it has to be established that 'The [d]efendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.' Thus, in this case, and as applicable to [d]efendant, the life sentence would be imposed based entirely on facts and elements proven in this individual case—not on prior convictions. . . . [¶] . . . [¶] The demurrer is overruled."

Recent California Supreme Court authority establishes that the trial court's ruling was correct.

■ The maximum punishment for a violation of section 288, subdivision (b)(1), is eight years in prison. (*Ibid.*) An offender who suffers convictions "in the present case or cases" (§ 667.61, subd. (e)(5)) of violations of

---

[3] We do not describe the facts relating to count 3. Defendant was acquitted on that count and, as described above, no further prosecution took place on a surviving charge of a lesser included offense thereto.

section 288, subdivision (b)(1), against more than one victim is, however, subject to a sentence of life imprisonment. (§ 667.61, subds. (b), (c)(4), (e)(5).) As the trial court noted, the "present case or cases" language is important to a full explanation of why there is no prosecution deadline in these circumstances.

Section 799 provides, as relevant here: "Prosecution for an offense punishable by death or by imprisonment in the state prison for life . . . may be commenced at any time."

Section 805 provides: "For the purpose of determining the applicable limitation of time pursuant to this chapter: [¶] (a) An offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense."

Defendant renews his contention that counts 1 and 4 are time-barred under a shorter statute of limitations than section 799, namely section 800, which provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense." In his view, because the maximum sentence for a violation of section 288, subdivision (b)(1), is eight years, section 800's six-year limitations period governs.[4]

█ Our Supreme Court's recent opinions in *People v. Jones* (2009) 47 Cal.4th 566 [98 Cal.Rptr.3d 546, 213 P.3d 997], and *People v. Brookfield* (2009) 47 Cal.4th 583 [98 Cal.Rptr.3d 535, 213 P.3d 988], make clear that determining whether an offense is punishable by life imprisonment must take into account an alternative sentencing scheme that applies to the offense based on other criminal conduct that the trier of fact has found to have occurred.

Jones was charged with violating section 246, i.e., shooting at an inhabited dwelling, which, in the ordinary case, would carry a maximum prison

---

[4] The Penal Code defines "prosecution" for the purposes of sections 799 and 800 as follows: "Except as otherwise provided in this chapter, for the purpose of this chapter, prosecution for an offense is commenced when any of the following occurs:
"(a) An indictment or information is filed.
"(b) A complaint is filed charging a misdemeanor or infraction.
"(c) The defendant is arraigned on a complaint that charges the defendant with a felony.
"(d) An arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint." (§ 804.)

sentence of seven years. Section 186.22, subdivision (b)(4), however, provides for a longer prison term for a section 246 violation if section 246 is violated for the benefit of a criminal street gang. (*People v. Jones, supra*, 47 Cal.4th at p. 575.) The trier of fact (in this case the trial court following a bench trial) found true the section 186.22, subdivision (b)(4), allegation. (*Jones*, at p. 569.)

*Jones* explained that section 186.22, subdivision (b)(4), does not constitute an enhancement—a key point given section 805's stricture that "Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense." (§ 805, subd. (a).) Rather, section 186.22, subdivision (b)(4), sets out an alternative penalty for a section 246 violation when an additional fact is present and proved in the prosecution of the defendant, namely that the defendant committed the shooting to benefit a street gang. (See *People v. Jones, supra*, 47 Cal.4th at pp. 575–576.)

*Jones* illustrated the foregoing point by discussing an analogous case, *People v. Florez* (2005) 132 Cal.App.4th 314 [33 Cal.Rptr.3d 632]. Florez "was convicted of shooting at an inhabited dwelling (§ 246), and the jury found that he committed the crime to benefit a criminal street gang (§ 186.22[, subd.] (b)(4)), thereby subjecting him to a sentence of life imprisonment (with a 15-year minimum sentence). At issue was the applicability of section 2933.1, which limits the amount of worktime credit that can be accrued by a defendant convicted of a felony listed in subdivision (c) of section 667.5. Among those felonies was '[a]ny felony punishable by . . . imprisonment in the state prison for life.' (§ 667.5, subd. (c)(7).) [¶] The Court of Appeal in *Florez* concluded that the limit on worktime credits in section 2933.1 applied to the defendant in that case, even though his sentence of life imprisonment was attributable to the alternate penalty provision set forth in section 186.22[, subdivision] (b)(4). The court held that by committing the crime of shooting at an inhabited dwelling to benefit a criminal street gang, the defendant had committed a felony punishable by imprisonment for life within the meaning of subdivision (c) of section 667.5." (*People v. Jones, supra*, 47 Cal.4th at p. 576.)

These observations apply to defendant's detriment in this case, given that the One Strike sentencing scheme is an alternate penalty scheme and the relevant statute, section 799, contains language parallel to that of section 667.5 as quoted in *Jones*.

■ *Jones* emphasized the distinction between sentence enhancements, which merely add to the substantive offense's term, and alternative penalties, which provide for a different term of imprisonment for the substantive

offense itself under certain circumstances. " 'Unlike an enhancement, which provides for an additional term of imprisonment, [a penalty provision] sets forth an alternate penalty for the underlying felony itself, when the jury has determined that the defendant has satisfied the conditions specified in the statute.' " (*People v. Jones, supra*, 47 Cal.4th at p. 578, italics omitted.)

The foregoing analysis was buttressed in *People v. Brookfield, supra*, 47 Cal.4th 583. In *Brookfield*, "[t]he Court of Appeal . . . directed the trial court to vacate defendant's 10-year sentence enhancement imposed under subdivisions (b) and (e)(1) of section 12022.53. The Court of Appeal rejected the trial court's reasoning that because defendant's crime of shooting at an inhabited dwelling was punishable by life imprisonment under section 186.22[, subdivision] (b)(4) (pertaining to crimes committed to benefit a criminal street gang), it was a 'felony punishable by death or imprisonment in the state prison for life' (§ 12022.53, subd. (a)(17) . . .), and therefore it was an offense to which section 12022.53's additional penalties applied. In the Court of Appeal's view, defendant's life term under section 186.22[, subdivision] (b)(4) was a sentence 'enhancement' that was not attributable to his crime of shooting at an inhabited dwelling (which by itself carries a range of three prison terms, none of which is a life sentence) . . . ." (*Id.* at p. 588, italics omitted.)

The Supreme Court went on to explain that no enhancement was involved and the underlying felony was one that called for life imprisonment in the circumstances of the case. "Shooting at an inhabited dwelling (§ 246) is, by itself, punishable by a term of three, five, or seven years in prison, at the trial court's discretion. But when that crime is committed to benefit a criminal street gang, as the jury here found, the penalty is life imprisonment, with a minimum term of no less than 15 years. (§ 186.22[, subd.] (b)(4).) As the companion case of [*Jones*] holds, that life term does not . . . constitute a sentence enhancement, because it is not imposed in addition to the sentence for the underlying crime . . . ; rather, it is an alternate penalty for that offense. Because the felony that defendant committed . . . was punishable by a life term under section 186.22[, subdivision] (b)(4) . . . , he committed a 'felony punishable by . . . imprisonment in the state prison for life' within the meaning of subdivision (a)(17) of section 12022.53." (*People v. Brookfield, supra*, 47 Cal.4th at p. 591, italics omitted.)

■ Section 667.61 is an alternate penalty scheme that, when charged, defines the length of imprisonment for the substantive offense of violating section 288, subdivision (b)(1). Thus, the unlimited timeframe for prosecution set out in section 799 for an offense "punishable by death or by imprisonment in the state prison for life . . ." applies, given that defendant was found guilty of violating section 288, subdivision (b)(1) *and* "in the present case or cases"

(§ 667.61, subd. (e)(5)) was found guilty of another such violation involving another victim (*ibid.*), and therefore was subject to the life-term sentencing provision contained in section 667.61, subdivision (b). Section 799 parallels the language of subdivision (c)(7) of section 667.5 and subdivision (a)(17) of section 12022.53, found determinative in *Jones* and *Brookfield*, respectively.

Defendant relies on *People v. Turner, supra*, 134 Cal.App.4th 1591 (*Turner*), which held, with regard to the recidivism-punishing "Three Strikes" law, that the limitation period for defendants whose punishment is meted out under its alternative punishment provisions is the limitation period applying to the qualifying underlying offense or offenses, and not the unlimited prosecution window that otherwise would be available to prosecute third-strike defendants.

In *Turner, supra*, 134 Cal.App.4th 1591, the defendant was charged with first degree residential robbery and it was alleged that he had suffered prior strike convictions under the Three Strikes law. (134 Cal.App.4th at pp. 1593, 1595.) The defendant argued to the trial court that the statute of limitations for the robbery offense had run, but the trial court ruled that section 799 governed because the Three Strikes law provided for a life sentence. (*Turner*, at pp. 1595–1596.) The reviewing court disagreed and held that courts must construe the "maximum punishment" for an "offense" referred to in section 805 as the maximum punishment prescribed for the underlying charged offense or offenses, not the maximum punishment authorized by allegations that would make defendant eligible for sentencing under the alternative sentencing scheme. (*Turner*, at pp. 1596–1598.)

*Turner* explained: "We base our conclusion that, for the purpose of determining the applicable statute of limitations, the maximum punishment is the punishment prescribed for the offense itself, primarily upon our interpretation of the plain language of section 799 and section 805. Both sections 799 and 805 refer only to prosecution for an '*offense*,' and punishment prescribed by 'statute for the *offense*,' not to prosecution and punishment that applies to a particular *offender*, and which is based upon facts other than the commission of the offense for which he or she is being prosecuted. The Penal Code defines an 'offense' as 'an *act* committed or omitted in violation of a law forbidding or commanding it.' [(§ 15.)]" (*Turner, supra*, 134 Cal.App.4th at pp. 1596–1597.)

*Turner* further explained: "The punishment of an indeterminate life term under the Three Strikes law . . . is not a punishment specified by statute for an 'offense,' i.e., the current act for which the defendant is to be prosecuted. It is an alternative sentence imposed upon those who commit a current felony offense, *and* who are recidivist offenders. The allegations of prior serious

felony convictions within the meaning of the Three Strikes law do not constitute an 'offense' for which the defendant is to be prosecuted. Instead these allegations refer only to facts relevant to a particular offender, which if proved establish not the commission of an offense, but his *status* as a recidivist." (*Turner, supra*, 134 Cal.App.4th at p. 1597.) Continuing to explore the matter, *Turner* noted that "[t]he indeterminate life term to which the offender may be subject, under the Three Strikes law, is not a punishment imposed for commission of the 'offense,' i.e., the current felony offense for which the defendant is being prosecuted. It is an alternative punishment that is imposed based upon the fact of the defendant's recidivism[—i.e., a fact applying to the offender and not the offense—]and it is imposed upon conviction of 'a felony' without regard to the seriousness of the current felony offense, if the defendant has two or more 'serious' or violent felony convictions." (*Ibid.*, italics omitted.)

The People argue that *Turner, supra*, 134 Cal.App.4th 1591, should be narrowly construed to apply only to the antirecidivist Three Strikes law, and not to the One Strike law, which punishes, as relevant here, not recidivism but the commission of sexual offenses against more than one victim. We agree.

■ *Turner* stated that "the issue is whether the 'offense' referred to must *itself* be punishable by life imprisonment, or whether the Legislature intended to include any offense which may result in a life sentence based upon facts other than the commission of the offense itself. . . . [T]he former interpretation is correct . . . ." (*Turner, supra*, 134 Cal.App.4th at p. 1596.) To the extent that this language might aid defendant in theory, however, it must be read in light of the *holding* of *Turner*, which considered the situations of wrongdoers "who commit a current felony offense, *and* who are recidivist offenders" (*id.* at p. 1597) under the Three Strikes law. Defendant's case does not involve recidivism and the precise holding of *Turner* does not apply. *Turner* is instructive, however, insofar as it notes the Legislature's preference "that the selection of the applicable statute of limitation should be based upon the seriousness of the offense as indicated by the punishment prescribed for it." (134 Cal.App.4th at p. 1598.) Legislation passed in 1984 "reflected the primary recommendation of the Law Revision Commission that the length of a 'limitations statute should generally be based on the seriousness of the crime.' [Citation.] The use of seriousness of the crime as the primary factor in determining the length of the applicable statute of limitations was designed to strike the right balance between the societal interest in pursuing and punishing those who commit serious crimes, and the importance of barring stale claims. [Citation.] It also served the procedural need to 'provid[e] predictability' and promote 'uniformity of treatment for perpetrators and victims of all serious crimes.' " (*Id.* at p. 1594.) Defendant's crimes were serious enough to

earn him a life sentence; therefore they were serious enough to warrant prosecution at any time during his natural life.

We conclude that *People v. Jones, supra*, 47 Cal.4th 566, and *People v. Brookfield, supra*, 47 Cal.4th 583, and the Legislature's intent that more serious crimes be prosecutable farther into the future, mandate that section 799 applies to the prosecution of defendant, and that prosecuting him for his conduct in 1995 or 1996 in counts 1 and 4 was not time-barred.

## II. *Sufficiency of the Evidence Regarding Coercion*

Defendant argues that under the due process guaranties contained in the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 15 of the California Constitution, the evidence of "menace[,] fear or duress" is insufficient to sustain the conviction on count 2 for a coerced lewd or lascivious act.

### A. *Standard of Review*

The standard of review of defendant's claim is well settled. Under the federal Constitution's due process clause, there is sufficient evidence to support defendant's conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) This test "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Id.* at pp. 318–319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "The court does not, however, limit its review to the evidence favorable to the respondent. . . . '[O]ur task . . . is twofold. First, we must resolve the issue in the light of the *whole record*— i.e., the entire picture of the defendant put before the jury—and may not limit our appraisal to isolated bits of evidence selected by the respondent. Second, we must judge whether the evidence of each of the essential elements . . . is *substantial*; it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "Not every surface conflict of evidence remains substantial in the light of other facts." ' " (*Id.* at p. 577.)

## B. *Facts and Law Regarding the Sufficiency of the Evidence*

Section 288 provides in relevant part: "(a) Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

"(b)(1) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

Thus, as relevant here, to obtain a conviction under section 288, subdivision (b)(1), the prosecution must prove beyond a reasonable doubt that the accused coerced the victim in a manner set forth in the statute.

Defendant used duress and thus has no meritorious claim that there was insufficient evidence of coercion.

As regards section 288, subdivision (b)(1), " 'the element of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person is intended as a requirement that the lewd act be undertaken without the consent of the victim.' " (*People v. Bolander* (1994) 23 Cal.App.4th 155, 160–161 [28 Cal.Rptr.2d 365].) Duress, in turn, includes " 'a direct or implied threat of . . . hardship or retribution sufficient to coerce a reasonable person of ordinary sensibilities to . . . perform an act which otherwise would not have been performed . . . .' " (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 [3 Cal.Rptr.2d 799].)

There was substantial evidence from which a rational trier of fact could conclude that the victim felt coerced to perform sexually gratifying acts on defendant because she feared he would tell her grandmother she had taken or attempted to take money from the bedroom. The molesting acts were not activities a child would ordinarily wish to participate in, and the victim testified that she found the episode unappetizing—she described the encounter as "[w]eird" and scary. No due process violation arises from defendant's conviction on count 2 under section 288, subdivision (b)(1).

## III. *Challenge to Admissibility of Child Sexual Abuse Evidence*

Defendant claims that the trial court erred under state law in admitting evidence on the subject of so-called child sexual abuse accommodation

syndrome, often referred to by its acronym CSAAS. He argues in essence that testimony on this topic is inadmissible as a matter of law. He reasons that child sexual abuse accommodation syndrome has now been shown to amount to "junk science." He maintains that it is based on the false "premise that jurors really believe certain myths, such as that all rape victims do not delay in reporting a rape or that child molesters are gay, alcoholic, shabby old men who linger in play yards, luring unsuspecting children with candy or money."

Defendant moved in limine to exclude child sexual abuse accommodation syndrome testimony as unscientific. The trial court, however, denied the motion, and eventually the jury heard testimony on the topic.

Defendant acknowledges that the child sexual abuse accommodation syndrome testimony admitted in his case "was in accordance with guidelines set forth in applicable current California caselaw." Accordingly, in principle it is not necessary for us to recite the particulars of the child sexual abuse accommodation syndrome testimony presented during the prosecution case. Nevertheless, we will describe relevant aspects of that testimony.

The victim in count 2 gave testimony in court that was inconsistent with her prior statements about defendant's molestation of her, and her in-court testimony painted defendant in a more exculpatory light than did her prior statements. (Fn. 2, *ante*.) A senior criminal investigator in the district attorney's office, Carl Lewis, testified that child sexual abuse accommodation syndrome may cause a child to retract her initial allegations of sexual abuse. (Lewis, it should be noted, testified that he is not a psychologist or a psychiatrist.) He testified: "When a child makes a disclosure of sexual abuse, . . . [t]here is a great deal of chaos brought into the child's life and the child's family's life. Child protective services goes into effect, law enforcement, the criminal justice system, medical and mental health fields, so there is a lot of attention focused on a family as a result of a child's disclosure. [¶] Some children might feel on their own that the attention may be [a] little too intense and want to have everything go back to just how it was before. 'I just want things to go back like they were.' Or someone could go to the child and say something like, 'Look at all of the trouble you caused because you told. Now I have to take time off from work to take you to appointments to meet with people because you told.' . . . [¶] And the effect of that, that I have seen, is the child who will either minimize the effect of what he or she said earlier[,] maybe saying something like, 'Well, it really wasn't as bad as I said[]' [or] 'It really didn't happen as many times as I said,' as a way of trying to deflect some of the intense pressure. Some kids might take it back entirely and say, 'You know, I was mad when I said it, so I just want to take it back.' "

We reject defendant's challenge to the admissibility of child sexual abuse accommodation syndrome evidence. The record is insufficiently developed to make such a challenge persuasive. It consists of a one-paragraph argument contained in defendant's unsuccessful motion in limine to exclude child sexual abuse accommodation syndrome evidence as unscientific and questions on cross-examination that brought to light the limited value of evidence on that topic. Because of the lack of a more substantial record below, defendant cannot offer a persuasive challenge to the admissibility of child sexual abuse accommodation syndrome evidence.[5] On appeal, he offers a number of authorities that he asserts support the proposition that such evidence is inadmissible, but we decline to overturn settled law on the basis of arguments presented on appeal with little opportunity for adversarial testing.

■   Accordingly, we discern no reason to depart from recent precedent, to wit: "CSAAS cases involve expert testimony regarding the responses of a child molestation victim. Expert testimony on the common reactions of a child molestation victim is not admissible to prove the sex crime charged actually occurred. However, CSAAS testimony 'is admissible to rehabilitate [the molestation victim's] credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.]' " (*People v. Sandoval* (2008) 164 Cal.App.4th 994, 1001 [79 Cal.Rptr.3d 634]; see *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301 [283 Cal.Rptr.382, 812 P.2d 563] [dictum].) Moreover, it appears that our Supreme Court reached the same conclusion in *People v. Brown* (2004) 33 Cal.4th 892, 906 [16 Cal.Rptr.3d 447, 94 P.3d 574], in which case we are bound by its reasoning (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]). Here, we reiterate, the victim's testimony on direct examination was inconsistent with her prior statements in a way that tended to exculpate defendant. " ' "Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. . . ." [Citation.]' " (*Sandoval, supra*, at p. 1002.)

---

[5] Contrary to the People's argument on appeal, however, we do not discern that defendant has failed to preserve the claim for review. His motion in limine adequately preserved it. There is, therefore, no need to address defendant's anticipatory claim that if we find the claim forfeited then defendant received ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution (see *Strickland v. Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839]).

## DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and McAdams, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 9, 2010, S181275.