Filed 9/25/13  P. v. Rendon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046907 |
| v. | (Super. Ct. No. 11NF0269) |
| RAYMOND RENDON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Raymond Rendon was convicted of 12 counts of lewd conduct on a child under 14 years of age, which were committed against his daughter and two stepsons when each was between six and 12 years of age. On appeal, defendant raises two arguments. We reject both, and therefore affirm the judgment.

First, defendant argues the prosecutor committed misconduct during closing argument by vouching for the veracity of the victims. Having reviewed the record, we conclude the prosecutor's argument was based on the facts in the record and the inferences reasonably drawn from those facts, and was therefore proper.

Second, defendant argues the trial court erred by admitting the testimony of an expert witness on the topic of child sexual abuse accommodation syndrome (CSAAS). Defendant's argument that CSAAS evidence should be excluded in all cases has been rejected by the California Supreme Court, and defendant makes no other argument that the CSAAS evidence, as offered in this case, violated his right to a fair trial.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant is the biological father of K., now 20 years old, and the stepfather of C. and T., now 17 and 14 years old, respectively. Between 1999 and 2005, defendant forced K. to undress in front of him, and committed lewd acts on her. Between November 2004 and March 2006, defendant forced T. to engage in acts of sexual intercourse, sodomy, oral copulation, and other lewd conduct with T.'s mother, A.F.; T. testified A.F. was asleep or passed out when those acts occurred. Between December 2004 and August 2005, defendant committed multiple acts of oral copulation and sodomy on C.

In March 2007, T. confided in a friend of his biological father that he had had sex with A.F. The friend reported this conversation to T.'s biological father, A.P.

2

When A.P. spoke with T. and C., they confirmed the truth of T.'s statements to A.P.'s friend. C. also told A.P. that defendant had abused him as well. A.P. reported the abuse to the Anaheim Police Department. Both C. and T. admitted at trial that they had failed to disclose, and, indeed, had denied they had been subject to, any abuse when interviewed by social service agency social workers and/or a psychologist involved in child custody proceedings.

In the summer of 2008, about two years after the last act charged, K. first disclosed to a friend her abuse by defendant. About the same time, K. disclosed the abuse to her mother, who did nothing about it. About two years later, K. disclosed the abuse to her aunt, M.L.; with M.L.'s support, K. called her mother and again told her about the abuse, but her mother again did nothing. (K. and her mother both testified that in 2010, M.L. had said she had also been inappropriately touched by defendant; at trial, however, M.L. denied she had suffered any abuse.) In September 2010, K. called D.W., who had had a relationship with defendant and had lived with K. when she was five or six years old, and reported the abuse to her; D.W. reported to the police what K. had told her.

Defendant was charged with 12 counts of committing a lewd act on a child under the age of 14. (Pen. Code, § 288, subd. (a).) The amended information alleged, as sentencing enhancements, that defendant committed the crimes against more than one victim (*id.*, §§ 667.61, subds. (b) & (e)(5), 1203.066, subd. (a)(7)), and, with respect to counts 1 through 6, that defendant had engaged in substantial sexual conduct with the victims (*id.*, § 1203.066, subd. (a)(8)). A jury convicted defendant of all charges, and found all sentencing enhancements to be true. Defendant was sentenced to a total term of 45 years to life in prison. (The trial court sentenced defendant to 15 years to life on each of the 12 counts; in addition to the principal term, the court ordered two of the life sentences to be served consecutively; all others were to be served concurrently.) Defendant timely appealed.

DISCUSSION

I.

*PROSECUTORIAL MISCONDUCT*

Defendant argues the prosecutor committed misconduct by vouching for the credibility of C., T., and K. "When a claim of misconduct is based on the prosecutor's comments before the jury . . . , "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305.) We review the allegedly improper statements by the prosecutor in the context of the entire argument, not in isolated pieces. (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

Defendant complains about several isolated statements by the prosecutor during closing argument. Having reviewed the entire argument, we conclude the complained-of statements were not improper. We quote those statements here, in context, italicizing the portions of the argument to which defendant objects:

"They did not need to lie to stay with their dad. Their mom hadn't done anything to get [them] back. So is that really a reason to lie? Or how about this, they wanted to stick it to a guy they couldn't even identify in court. They didn't even recognize him. They had to look at his booking photo to say, oh, yeah. And even T[.] said, well, if I could see his ponytail. So he has a deep seeded [*sic*] resentment to get back at this guy? That doesn't make any sense at all. [¶] Let's talk about K[.]. She is going to lie about her father doing all of these things to her to get a cell phone reactivated, to get some money? She held a grudge for ten years because her Hello Kitty and Barbie were put into a closet when T[.] and C[.] moved in? That is absurd. Because she didn't like A[.] F[.]? Nobody liked A[.] F[.]. Not one person had a good thing— none of the defense witnesses had anything good to say about her. [¶] *There is no reason why these kids would lie*."

4

"*These kids have no reason to lie about the sexual abuse* and they certainly weren't smart enough to act out at the time when the abuse was happening so that years later we can show that that behavior was consistent with being a victim of sexual abuse. [¶] How do we know it happened? We talked about this in jury selection. One witness, if you believe them, supports a conviction. That's it. That is all you need. You believe T[.], you believe C[.], you believe K[.], guilty. End of story. You don't need anything else. But in this case it's not just that. [¶] Because while C[.] got up on the stand and said what happened to him, he was in a box. He did not want to be here. He is 16 years old talking about being sodomized and orally copulated by a man who was taking care of him, who would sneak into his bedroom at night. You think that was easy for a 16-year-old boy to talk about? *He was credible. He was believable.* And if you believe him, defendant is guilty of counts 1 through 4."

"And K[.], her whole family has turned against her. None of his family believes her. None of them want to believe her. And she came in and stood up and said what happened to her was wrong and that the defendant had done these things. *She is believable.* And if you believe her, he is guilty of counts 10 through 12. Each one of these standing alone supports a conviction."

"And after K[.] got back [(from Idaho)] that's when she went and found D[.W.] to talk about the abuse because she had the strength, because she thought she had [the] backing of her aunt, an aunt she had confided in, an aunt that pulled out the rug from under her yesterday in the courtroom. And if that is how she wants to live her life, that's fine. But K[.] had to try to come forward in 2008 to both her mom and to her friend . . . . And in 2010 when she finally felt like someone actually believed her, she found the strength to come forward again. [¶] And so *K[.] has no reason to lie.* A[.F.] is out of the picture. She's moved on with her life. K[.] has. She came forward because she felt she needed to say that what had happened to her had happened to her. Because it's not right. She didn't ask for it."

*"These children had no motive to lie especially about these ugly and disgusting deviant acts that the defendant had them do."*

"The defendant is a monster who victimized the three children who lived in his home. It's his depravity that brought us here today and no one is to blame but him. The acts are disgusting. The defendant needs to be held responsible for these acts. . . . *It's absolutely true that he committed these horrible acts*, again[st] more than one victim. [¶] I ask that you find him guilty, guilty of all 12 counts, find him guilty of all the allegations to be true."

Defendant's trial counsel, during his closing argument, argued that K., T., and C. did have a motive to lie.

During final argument, the prosecutor argued as follows (again, defendant's objected-to portions of the argument are italicized): "The defendant thought that he had picked the perfect victims. Who was going to believe these two kids, T[.] and C[.]? They had no family. They relied on him. Built in issues with their daddy. And K[.], who would believe her? His whole family has turned against her. T[.'s] and C[.'s] lives have been torn apart about this. They have not healed as a family. And K[.] is standing alone as his whole family calls her a liar. [¶] Why would K[.] come forward now? She told you my aunt gave me the strength. Why would an aunt who hadn't had anything happen to her provide her strength? M[.] L[.] has her own issues to deal with. The fact that she doesn't want to admit what happened to her is on her. But *what happened to K[.] is true. What happened to T[.] and C[.] is true*. They lived a nightmare. Betrayed and abused by the person who was supposed to be taking care of them. [¶] How is T[.] ever going to get over the fact that his first sexual experience was with his mom? And how is C[.] going to reconcile what happened to him as a child as he becomes a man? And how is K[.] supposed to move forward with a family that doesn't believe her or like her and traipsed in calling her a liar and a thief despite there is no evidence to suggest that she is? [¶] All of these kids, all of them are lying, every single one of them, and all of the people

6

along the way who saw these strange things and who had things told to them all at the time when the kids were being abused. [¶] This is a case where these children were so betrayed by the deviance of the defendant I can't even begin to understand what would cause a person to think of these horrific acts and force a child to do them. And yet they happened. And it's not easy to talk about and I am sure it wasn't easy to listen to. But C[.] and T[.] came in here and told you the truth. Believe them. And fin[d] him guilty. [¶] *K[.] came in here. She told you the truth. None of these kids have a reason to lie.* One of them on their own is sufficient to convict him. He admitted on the stand he was a bad man, a bad person. Convict him. Find him guilty of all 12 counts of the substantial sexual conduct and also the multiple victim allegations."

Defendant correctly cites to numerous cases for the proposition that while "[a] prosecutor may make 'assurances regarding the apparent honesty or reliability of' a witness 'based on the "facts of [the] record and the inferences reasonably drawn therefrom[,]"' . . . a 'prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record.'" (*People v. Turner* (2004) 34 Cal.4th 406, 432-433, citations omitted.)

In this case, could inferences reasonably be drawn from the evidence to support findings that K., T., and C. did not have a motive to lie? Yes. The prosecutor made arguments on this issue, and defendant's trial counsel argued to the jury that K., T., and C. did have a motive to lie. Both counsel were entitled to do so, and there was no error in the prosecutor's argument.

## II.

### *CSAAS EVIDENCE*

Defendant also argues the trial court erred by permitting the testimony of an expert witness on CSAAS, over defendant's objection. A trial court's decision to admit

7

expert testimony will only be reversed if a manifest abuse of discretion has occurred. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299.)

CSAAS evidence is not admissible to prove a charged sex crime actually occurred. Rather, it is admissible to "rebut a defendant's attack on the credibility of the alleged victim(s)" (*People v. Bowker* (1988) 203 Cal.App.3d 385, 393), or "'to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior'" (*People v. McAlpin*, *supra*, 53 Cal.3d at p. 1301). The jury was correctly instructed as to the limited admissibility of the CSAAS evidence.[1]

What defendant is asking this court to do is to ignore the long-standing rule that CSAAS evidence is admissible in California, and to instead follow the rule of a few other jurisdictions that typically exclude such evidence. Defendant's argument is directly contrary to California Supreme Court authority. (See *People v. Brown* (2004) 33 Cal.4th 892, 905-906; *People v. McAlpin*, *supra*, 53 Cal.3d at pp. 1301-1302; see also *People v. Perez* (2010) 182 Cal.App.4th 231, 245; *People v. Sandoval* (2008) 164 Cal.App.4th 994, 1001-1002; *In re S.C.* (2006) 138 Cal.App.4th 396, 418 [admissibility in dependency proceedings]; *People v. Wells* (2004) 118 Cal.App.4th 179, 188; *People v. Housley* (1992) 6 Cal.App.4th 947, 955-956; *People v. Archer* (1989) 215 Cal.App.3d 197, 205, fn. 2; *People v. Bowker*, *supra*, 203 Cal.App.3d at p. 392.) We must therefore reject defendant's request that we hold all CSAAS evidence is inadmissible. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[1] The jury was instructed with CALCRIM No. 1193, as follows: "You have heard testimony from Dr. Jody Ward regarding child sexual abuse accommodation syndrome. Dr. Ward's testimony is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not C[.]'s, T[.]'s or K[.]'s conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of his or her testimony."

Defendant does not argue that the CSAAS evidence was admitted for an improper purpose, or was admitted in violation of Evidence Code section 352 or any other evidentiary limitation. We find no abuse of the trial court's discretion in admitting evidence as specifically authorized by the California Supreme Court.

DISPOSITION

The judgment is affirmed.

FYBEL, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

MOORE, J.