Filed 8/6/14  P. v. Teal CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064959 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE323874) |
| LOCH SHANE TEAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

A jury convicted Loch Shane Teal of multiple sex offenses involving acts committed on minor children.  He was sentenced to a lengthy term of imprisonment which is the equivalent of life without parole.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, asking this court to review the record for error. We offered Teal the opportunity to file his own brief on appeal but he has not responded.

Counsel's brief fully and accurately summarizes both the procedural and factual basis of this appeal. In the interest of preserving resources, we set forth the statement of the case and the statement of the facts from the appellant's brief.

### STATEMENT OF THE CASE

By amended information, appellant was charged with the following: counts 1, 2, and 3, oral copulation with a child 10 years old or younger, in violation of Penal Code[1] section 288.7, subdivision (b); counts 4 and 5, lewd act upon a child under the age of 14, in violation of section 288, subdivision (a); count 6, sexual intercourse with a child 10 years old or younger, in violation of section 288.7, subdivision (a); count 7, sodomy with a child 10 years old or younger, in violation of section 288.7, subdivision (a); count 8, oral copulation with a child 10 years old or younger, in violation of section 288.7, subdivision (b); counts 9 through 21, lewd act upon a child under the age of 14, in violation of section 288, subdivision (a); and count 22, possession of child pornography, in violation of section 311.11, subdivision (a). Counts 1 through 9 pertained to victim S.C. and were alleged to have occurred between January 1, 2011 and January 9, 2012. Counts 10 through 18 pertained to victim M.W. and were alleged to have occurred

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

between January 1, 1996 and November 29, 2000. Counts 19 through 21 pertained to victim D.R. and were alleged to have occurred between March 4, 2000 and March 4, 2001. It was further alleged as to counts 4, 5, and 9 through 21 that the offenses involved multiple victims within the meaning of section 667.61, subdivisions (b), (c), and (e), and that appellant engaged in substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8).

It was further alleged that counts 10 through 21 were committed before the victim turned 18 years old and the charges were filed prior to the victim's 28th birthday within the meaning of section 801.1, subdivision (a). Upon a jury trial, appellant was found guilty as charged of all counts. The jury further found true all of the multiple victim and substantial sexual conduct allegations.[2] Appellant was sentenced to a total term of 335 years to life in prison, consisting of consecutive terms of 25 years to life for each of counts 6 and 7, and consecutive terms of 15 years to life for each of counts 1 through 5 and 8 through 21. The court imposed a concurrent term of two years for count 22. Appellant filed a timely notice of appeal.

---

[2] The statute of limitations compliance allegation pursuant to section 801.1, subdivision (a), was not submitted to the jury because the trial court ruled all the charges were timely as a matter of law under section 799.

STATEMENT OF FACTS

Prosecution Evidence

1. Counts 10-18 (victim M.W.)

M.W. was born in November of 1989, and was 23 years old at the time of trial. In 1992, M.W.'s mother began dating, and later married, appellant, and they began living with appellant. A few months later, when she was still about three years old, appellant began sexually abusing M.W. on a recurring basis. The abuse began with appellant kissing her on the mouth and progressed into M.W. orally copulating him. Appellant told M.W. not to tell anyone. M.W. did not know how frequently the abuse occurred when she was between three and five years old, but she guessed it occurred about eight or 10 times. During that time period, they lived in numerous different apartments, including one in Linda Vista or Poway, one in Lakeside, and one on Mollison Avenue in El Cajon.

Counts 10-15 specifically: M.W. testified that when she was either five or six years old and in either the first or second grade, around 1996, their family moved into another apartment on Madison Avenue. M.W. testified that during the time period they lived at the Madison Avenue apartment, starting after January 1, 1996 and prior to her seventh birthday in November of 1996, appellant had M.W. orally copulate him five or six times, and he sodomized her at least twice. Appellant typically lowered the blinds and played a pornographic videotape during these encounters.

Count 16 specifically: On another occasion when she was eight years old and they were still living on Madison Avenue, M.W.'s mother happened to come home just after appellant ejaculated into M.W.'s mouth. As she was washing out her mouth, M.W. said

4

to her mother, "Daddy made me suck his dick." M.W.'s mother confronted appellant. However, M.W.'s mother, who frequently used methamphetamine, did not contact anyone because she did not know if M.W. was telling the truth, she thought if she contacted anyone they would take away her children, and she did not want to be alone. M.W. testified after this incident, the abuse stopped for about a year.

Counts 17 and 18 specifically: In around February of 1998, the family moved to a different apartment on Chase Avenue, and the sexual abuse started up again about six months later. Between her ninth birthday in November of 1998 and her 11th birthday in November of 2000, M.W. testified she orally copulated appellant two or three times at this apartment on Chase Avenue. By the time she was 10 years old, M.W. began refusing appellant's sexual requests and the abuse stopped. Following appellant's last request when she was 11 years old, M.W. again reported the abuse to her mother. Although her mother was not using drugs at that time, her mother again expressed disbelief, was still scared of losing her children, and again did not contact any authorities. It was stipulated that appellant was involved in a family court proceeding when M.W. was 13 years old, that M.W. disclosed the abuse to a therapist at that time, and appellant was ordered to do counseling by the family court. However, there was never any criminal investigation or criminal prosecution at that time.

2. Counts 19-21 (victim D.R.)

D.R. was born in November of 1993. D.R. is related to appellant. D.R. testified that when she was about eight years old, she lived with appellant and the rest of M.W.'s family at the Chase Avenue apartment for about one year, rather than living with her own

5

parents. M.W. testified that D.R. lived with them at the Chase Avenue apartment off and on for several months at a time for a period of about two years. D.R. testified that on one occasion while she was living there, appellant grabbed D.R.'s head and put his penis in her mouth. At trial, D.R. did not remember any other acts of sexual abuse committed upon her by appellant.

D.R.'s aunt did not recall D.R. ever living with appellant, but recalled that she would stay there for a day or two on occasion. On March 4, 2001, while D.R. was staying with her aunt, D.R.'s aunt found blood on D.R.'s underwear. Upon questioning by her aunt, D.R. said appellant had touched her. D.R.'s aunt then took her to a hospital.

A physician's examination on March 4, 2001 revealed a somewhat irregularly-shaped hymen and a small, fresh scratch on the side wall of D.R.'s right labia minora. During that examination, D.R. complained of pain in her abdomen, vaginal itching, and pain on her vulva. Dr. Dully opined that vaginal itching can be a symptom of sexual abuse, although it is also very common in other situations. Dr. Dully further noted that the shape of D.R.'s hymen, although imperfectly round and thus somewhat unusual, could nevertheless be considered normal. It was determined that D.R.'s last contact with appellant had been seven days prior. Although it is possible for the scratch on her labia minora to have not healed in a week, the scratch appeared fresh and was consistent with D.R. itching herself. Dr. Dully opined that it was very common for there to be no signs of physical abuse present on a child, even in cases where it is virtually certain the child has been abused.

On April 6, 2001, D.R. was interviewed by a social worker, and a recording of the interview was played for the jury. During that interview, D.R. said that appellant touched her vagina with his hand, under her clothes, more than once. Appellant told her not to tell anyone on one occasion.

3.  Counts 1-9 (victim S.C.)

S.C. was born in December of 2001. Tamara Palmer was S.C.'s regular babysitter for several years, and she would babysit S.C. both at S.C.'s residence and at her own residence. Appellant subsequently began dating Palmer, and appellant started to help babysit S.C. At the beginning, appellant would occasionally accompany Palmer to S.C.'s residence to babysit with her. However, towards the end of 2011, appellant began to occasionally babysit S.C. alone at the apartment he shared with Palmer. S.C.'s father would typically drop S.C. off at appellant's apartment and would pick her up an hour or so later.

Appellant would buy S.C. snacks and give her money so that she could play an online computer game at his apartment. Eventually, while babysitting her, appellant showed S.C. pornographic videos on his computer, placed his mouth on S.C.'s neck at least three times, touched her vagina with his fingers at least five times, and placed his mouth and tongue on her vagina at least three or four times.

S.C. testified that on January 9, 2012, which was the last time she was at appellant's apartment, appellant took off all of her clothes. Appellant then touched her left breast, touched S.C.'s vagina with his fingers, placed his mouth and tongue on S.C.'s vagina, put his penis in S.C.'s mouth, and sodomized her by putting his penis in her

7

"bottom." This incident on January 9, 2012 was interrupted when S.C.'s father returned earlier than expected to pick her up at appellant's residence. When S.C.'s father knocked on the door, appellant did not answer the door for several minutes while he and S.C. got dressed. Several days later, S.C. disclosed the abuse to her parents.

On January 17, 2012, Dr. Kathleen Dully conducted a physical examination of S.C. Dr. Dully testified that S.C. disclosed pain in her private parts and said "they hurt whenever he sticks his finger up my vagina." S.C. also reported having suffered anal bleeding three months earlier. A physical examination of S.C.'s vaginal area was normal. Dr. Dully identified several abrasions on the outside of S.C.'s anus, but could not determine with specificity when the injury occurred, or whether it was the result of abuse. However, the injury could have been caused by a penis slightly penetrating her anus.

On January 18, 2012, a forensic interview was conducted with S.C. and a video of the interview was played for the jury. During this interview, S.C. said that appellant had taken her clothes off, placed her on top of him, made her lick his penis, and forced her to have sex with him. S.C. said the behavior had been going on for months, maybe years, and that appellant had told her not to tell her parents or he would get in trouble. Appellant showed S.C. pictures and videos of people having sex and once licked her neck while at her house. During S.C.'s last visit to appellant's apartment, S.C. said appellant took off her clothes, placed her on top of him, licked her vagina and made her lick his penis. S.C. admitted there were other events she did not want to disclose at that time.

On January 19, 2012, S.C. and her father met with Detective Paul Ward in order to conduct a surreptitious controlled phone call between S.C. and appellant, which was

8

recorded by police and played for the jury. During the call, S.C. told appellant that her privates had been hurting a lot and bleeding since the last time "we did it." Appellant told S.C. not to tell her parents, told her not to go to a doctor, and told her that this bleeding is normal when a "piece down there" gets torn.

On January 20, 2012, a second forensic interview was conducted with S.C., and a video was played for the jury. During this interview, S.C. said that appellant had rubbed her breast, stuck his tongue in her mouth, rubbed and penetrated her vagina with his finger "many times," and also made her touch his penis. S.C. reiterated many of her statements from the first forensic interview, and also noted that appellant had placed his mouth on her vagina more than one time, and described an incident at her home when defendant kissed her on the vagina while they sat together on the couch. S.C. also described appellant placing cream on her vagina, and said he had engaged in painful anal and vaginal intercourse with her.

### 4. Count 22

On January 20, 2012, police searched appellant's apartment and seized a desktop computer, a laptop computer, and several external hard drives. A search for child pornography websites on these items yielded numerous stories about children having sex, links to internet websites depicting child pornography, and more than 100 questionable pictures and animated drawings depicting what appeared to be children in sexual situations and acts. One of the documents contained appellant's email address.

9

DISCUSSION

As we have noted, appellate counsel has filed a brief pursuant to *Wende, supra,* 25 Cal.3d 436 asking this court to review the record for error. The brief indicates counsel has not been able to identify any arguable issues on appeal. Pursuant to *Anders, supra,* 386 U.S. 738, counsel has identified the following possible, but not arguable issues:

1. Whether the convictions were barred by the statute of limitations, and in particular whether his convictions in counts 10 though 15 were time-barred. (§§ 799, 801.1, subd. (a); *People v. Perez* (2010) 182 Cal.App.4th 231, 236-242.)

2. Whether the court erred in admitting the victims' out-of-court statements regarding the alleged abuse. (Evid. Code, §§ 1360, 1240.)

We have reviewed the entire record and have not identified any arguable issues for reversal on appeal. Competent counsel has represented Teal on this appeal.

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


AARON, J.

10