Filed 7/7/16 P. v. Bojorquez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICENTE SOTO BOJORQUEZ,<br><br>    Defendant and Appellant. | B256907<br><br>(Los Angeles County<br>Super. Ct. No. NA088929) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Affirmed.

        Koryn & Koryn and Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Vicente Soto Bojorquez appeals from the judgment entered following his convictions on six counts of lewd act upon a child (counts 1 – 3 , 5, 6 & 8) each with a multiple victim finding (Pen. Code, §§ 288, subd. (a), 667.61, former subds. (b) & (e)(5)).[1] The court sentenced appellant to prison for three consecutive terms of 15 years to life, with three concurrent terms of 15 years to life. We affirm.

## FACTUAL SUMMARY

1. *Appellant's Offenses Against A.B.*

a. Appellant's Present Offenses Against A.B. (Counts 1 – 3).

A.B., appellant's daughter, was born in April 1987. She testified that between April 1, 1995, and June 30, 1998, she and appellant lived in San Pedro. One night in about 1995, A.B. was asleep in bed when she was awakened by something touching her mouth. Appellant had put his penis on her mouth. A.B. saw appellant standing next to her bed with his penis protruding through his clothing. When A.B. awoke, appellant told her to go back to sleep, then he left. A.B. testified appellant put his penis on her mouth "at least a couple times a week" between "the time [she] turned eight and up to the day before [she] turned 10, so basically on and between April 1 of 1995 and March 31st of 1998 [*sic*]." (The day before A.B. turned 10 was in March 1997.)

During the period from about April 1, 1995, through March 31, 1997 (when, according to A.B., she was "between the ages of eight through nine" or she was "eight or nine"), appellant, using his hands, touched and sometimes rubbed A.B.'s vagina over her clothing. Appellant did this "at least a couple times a week."

During the period from April 1, 1995, through March 31, 1998, A.B. frequently would watch television in appellant's bed with appellant. Her younger brother would be on the other side of appellant or in front of the bed. Appellant, under the covers, would rub A.B.'s vagina over her clothing. She would try to move away or move appellant's hand, but appellant would tell her to calm down and would try to continue rubbing her vagina. A.B. testified appellant did this "a couple times a week at least." On one

---

[1]    Unless otherwise indicated, subsequent section references are to the Penal Code.

occasion when appellant was touching A.B. in San Pedro, he told her he was doing it to make sure she knew what to do in case somebody else tried to touch her.

b. Appellant's Uncharged Offenses Against A.B.

In 1998, A.B. and her family moved to Illinois. The People introduced evidence of uncharged offenses appellant committed on September 12, 1999, against A.B. in Illinois. In particular, on that date, after A.B.'s mother had left for work, A.B. was in bed asleep when appellant awakened her by pulling her pajama pants down to her knees. She tried to pull them up but appellant told her to calm down. Appellant, using his hands, began rubbing A.B.'s vagina. Appellant then, kneeling next to A.B., tried to put his mouth on her vagina. A.B. kicked appellant, he told her to calm down, then left. A.B. entered the living room to watch television with her brother and the baby. Appellant sat on the couch and, using his hand, touched A.B.'s vagina over her clothing.

Appellant told A.B.'s brother he needed to go outside immediately. Her brother complied. Appellant angrily told A.B. to put the baby in the crib and A.B. complied. Over A.B.'s resistance, appellant took A.B. into the bathroom and pulled down her pants. Appellant turned A.B. around and put his penis against her buttocks and on her vagina. A.B. resisted but appellant told her to calm down and said she was overreacting. Appellant later released A.B.[2]

On September 12, 1999, Joseph Green, an Illinois police officer, interviewed A.B. at the residence. A.B. told Green that immediately after appellant and A.B. exited the bathroom, appellant said if she told anyone, he would kill them both.

---

[2] A.B. left the bathroom, apparently entered the kitchen, and began washing dishes. She later approached the pantry. Appellant approached and asked A.B. what she was trying to do. He grabbed a knife from the pantry's shelf, asked her if she was coming to get the knife so she could kill him, and told her that, if she wanted, he could kill himself. Appellant repeated he hated himself and wanted to kill himself.

3

Green interviewed appellant at the police station and appellant confirmed what A.B. told Green. Appellant told Green the following. Appellant pulled A.B.'s pants down and held her hips to try to get close so he could put his tongue on her vagina. A.B. pulled away and left the room. Shortly thereafter, appellant took A.B. into the bathroom, locked the door, pulled her pants down, and put his penis against her buttocks. Appellant experienced an erection. A.B. tried to scream, but appellant covered her mouth and choked her. Appellant later released A.B., telling her he would kill himself if she told anybody. Appellant subsequently obtained a knife and threatened to kill himself.

A.B. testified that in about 2001, she and her mother were living in San Pedro again and appellant, while visiting, touched A.B.'s vagina about three times. A.B. was about 15 when appellant stopped molesting her.

2. *Appellant's Present Offenses Against N.R. (Counts 5 & 6).*

N.R., appellant's niece, was born in June 1991. Between June 26, 2000 and June 25, 2002, N.R. lived with her family in San Pedro. Appellant would visit and stay in a back house where her uncles lived. On one occasion, N.R. went to the back house to watch television. N.R. was lying on the couch when appellant sat next to her. Appellant, using his hands, began massaging N.R.'s vagina over her clothes for a few minutes. Appellant later kissed N.R.'s lips and bit her lower lip. N.R. eventually left and entered the kitchen in the main residence.

Appellant entered the kitchen and, while N.R. was at the stove, he approached her from behind. Both were fully clothed. Appellant put his hands on N.R.'s waist and rubbed his penis against her buttocks. N.R. testified she "felt [appellant's] penis in the center, . . . through [N.R.'s] clothing." She also testified, a "little bit" of appellant's penis "enter[ed] inside the center of [N.R.'s] buttocks." N.R. went to her room and locked herself inside, and later heard appellant trying to enter.

4

3. *Appellant's Present Offense Against H.E. (Count 8).*

H.E., appellant's nephew, was born in September 1989. Between December 1, 1994, and December 31, 1997, H.E. lived with his family in San Pedro. Appellant lived nearby and H.E. would visit appellant's house to play with his children. H.E. would also visit on holidays. One Christmas between December 1, 1994, and December 31, 1997, H.E., his cousins, and appellant went to appellant's house to get gifts. After getting gifts, the cousins returned to H.E.'s house, but H.E. and appellant remained in appellant's house. H.E. was sitting on the edge of the bed in appellant's bedroom. Appellant, using his hand, touched H.E.'s penis and told him "this is how you make it grow." Appellant pulled on H.E.'s penis. H.E. also might have touched appellant's penis. H.E. first went to the police in 2011.

4. *Appellant's Uncharged Offenses Against W.B.*

W.B., appellant's niece, was born in September 1985. A.B., N.R., and H.E. were W.B.'s cousins. During the 1990's, W.B. spent summers and weekends at appellant's house in San Pedro. On one occasion between perhaps September 21, 1991, and September 21, 1994, W.B. and A.B. were watching television in bed with appellant. Appellant was between W.B. and A.B. Appellant put his hand on W.B.'s leg and inner thigh, and moved his hand to perhaps an inch from W.B.'s vagina. W.B., uncomfortable, told appellant she needed to go to the restroom. Appellant held her down, repeatedly said no, and told her it was okay and "[c]ome on." W.B. ran to the bathroom and locked herself inside. Appellant later told W.B. he was touching her to test her to make sure she did not let anyone touch her that way.

In about 2001, W.B. and appellant were at her mother's house in San Pedro. W.B. indicated she had hurt her neck. Appellant replied he would fix it. Appellant touched N.B. between her neck and shoulder. He then, using his right hand, grabbed her breast over her clothing. W.B. pushed appellant, asked what he was doing, and told him to get out. Appellant began hitting his head, yelled "ahhh," and later left. The next day or weekend, W.B. and appellant were at a family party when he tried to hug her. She pushed him away and told him not to come near her again.

5

5. *Subsequent Investigation.*

Los Angeles Police Officer Sylvia Ota testified she first interviewed H.E. on May 24, 2011. On December 5, 2012, Ota interviewed appellant, who told her the following. Appellant touched A.B.'s vagina three or four times, and kissed her vagina once, when she was in the second or third grade to teach her not to let anyone else molest her. Appellant touched H.E.'s privates when H.E. was in the second or third grade, and appellant had H.E. touch appellant's penis. Appellant touched H.E. so H.E. would know not to let anyone else molest him. Appellant gave W.B. a massage.

Appellant presented no defense evidence.

## ISSUES

Appellant claims (1) the trial court erred by receiving uncharged sexual offense evidence, (2) the statute of limitations barred prosecution of count 8, and (3) the One Strike law was inapplicable to any count because the People failed to plead and prove appellant was ineligible for probation.

## DISCUSSION

1. *The Court Properly Received the Uncharged Sexual Offense Evidence.*

a. Pertinent Facts.

Prior to trial, the prosecutor represented he intended to introduce, pursuant to Evidence Code section 1108,[3] testimony from W.B. that, inter alia, appellant rubbed her legs, getting "close to [her] vagina" and "up to the area of her vagina," when she was about nine. Appellant posed an Evidence Code section 352 objection.[4]

---

[3] Evidence Code section 1108, provides, in relevant part, "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

[4] Evidence Code section 352, states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

6

The court indicated as follows. The Legislature enacted Evidence Code section 1108 specifically to permit certain uncharged offense evidence in sex offenses cases. The proffer was W.B. was at appellant's place when appellant engaged in the misconduct, she tried to leave, appellant asked her to stay and continued touching her, then she decided to leave and went to the bathroom. Appellant later told W.B. he was testing her to make sure she would not let others touch her, and he told her not to tell anyone. The court indicated the evidence was such that a jury could decide whether appellant committed a "sexual offense" within the meaning of Evidence Code section 1108, subdivision (d)(1)(A). The court stated, "As to the 352 argument, this is not outweighed by prejudice. And as far as [whether A.B. could corroborate W.B.'s proposed testimony[5]] that goes to the weight [and] not admissibility." The court ruled W.B.'s proposed testimony was admissible.

The prosecutor also represented he intended to introduce, pursuant to Evidence Code section 1108, testimony from W.B. that appellant grabbed her breast when she was about 16. The prosecutor discussed evidence appellant did so against W.B.'s will. Appellant objected W.B. was 16 at the time, the incident was unrelated, there was no evidence appellant massaged W.B.'s shoulder against her will, and the incident was remote from the alleged sexual offenses.

The court indicated as follows. It was reasonably inferable W.B. did not consent to appellant touching her breast, and the act was sexual battery, a "sexual offense" within the meaning of Evidence Code section 1108, subdivision (d)(1)(A). The remaining issue was whether, under Evidence Code section 352, probative value outweighed prejudice, and appellant's argument was the proposed testimony was remote.

---

[5] The prosecutor had represented that appellant had engaged in concurrent misconduct with W.B. and A.B. Appellant's counsel denied A.B. had corroborated this.

7

The court indicated the proposed testimony showed appellant's "pattern of certain behaviors" as to all alleged victims and the evidence could be helpful, "therefore, I do find that the probative value is not outweighed by prejudice under Evidence Code section 352." The court ruled the proposed testimony was admissible.

The prosecutor also represented he intended to introduce, pursuant to Evidence Code section 1108, evidence that, inter alia, appellant molested A.B. in Illinois. The proffer was essentially the same as A.B.'s previously discussed trial testimony concerning the Illinois molestations and appellant's statement to Green. Appellant posed an Evidence Code section 352 objection.

The court indicated as follows. The proffered evidence indicated appellant committed a "sexual offense" within the meaning of Evidence Code section 1108, subdivision (d)(1)(A). The next issue was whether Evidence Code section 352 would disallow the evidence because prejudice outweighed probative value. The uncharged incident occurred "pretty much" during the course of conduct of appellant's charged offense against A.B. The uncharged evidence was helpful to explain a pattern and as evidence of specific intent and lack of mistake. The court concluded that, under Evidence Code section 352, the probative value was not outweighed by prejudice, and the proposed evidence was admissible.

b. Analysis.

Appellant claims the trial court erred by admitting evidence of uncharged sexual offenses. He argues the trial court erred by admitting the evidence appellant (1) touched W.B.'s legs when she was nine and grabbed her breast when she was 16, (2) molested

8

A.B. in Illinois, and (3) molested A.B. after she returned to California.  Resolving the issue under familiar standards,[6] we reject appellant's claim.

To the extent appellant argues the trial court erred by admitting evidence he molested A.B. after she returned to California, appellant waived the issue by failing to object to the introduction of the evidence on the ground it was irrelevant, inadmissible under Evidence Code section 1108, or excludable under Evidence Code section 352. (Cf. *People v. Valdez* (2012) 55 Cal.4th 82, 138-139; *People v. Pierce* (2002) 104 Cal.App.4th 893, 898; Evid. Code, § 353, subd. (a).)

As to the merits, the trial court reasonably could have concluded appellant's touching of W.B.'s legs when she was about nine was a lewd act upon a child (§ 288, subd. (a)) and his grabbing of W.B.'s breast when she was about 16 was a sexual battery (§ 243.4, subds. (a), (f) & (g)(1)) with the result each act was a "sexual offense" within

---

[6]    In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), our Supreme Court observed, "In 1995, the Legislature enacted section 1108 to expand the admissibility of disposition or propensity evidence in sex offense cases. . . .  [¶]  Available legislative history indicates section 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility.  In this regard, section 1108 implicitly abrogates prior decisions of this court indicating that 'propensity' evidence is per se unduly prejudicial to the defense. [Citation.]" (*Falsetta,* at p. 911.)  "[E]vidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses." (*Id.* at p. 920.)  "The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose.  It is enough the charged and uncharged offenses are sex offenses as defined in section 1108. [Fn. omitted.]" (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41 (*Frazier*).)  When ruling on an Evidence Code section 352 issue, a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so.  All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under Evidence Code section 352. (*People v. Williams* (1997) 16 Cal.4th 153, 213.)  We review for abuse of discretion a trial court's ruling on issues under Evidence Code sections 1108 and 352. (*People v. Spicer* (2015) 235 Cal.App.4th 1359, 1382.)  Moreover, the application of ordinary rules of evidence does not impermissibly infringe on a defendant's right to due process. (Cf. *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.)

the meaning of Evidence Code section 1108, subdivision (d)(1)(A). The court also reasonably could have concluded as to appellant's Illinois misconduct that his two separate acts of touching A.B.'s vagina were each a lewd act upon a child (§ 288, subd. (a)), his attempt to put his mouth on her vagina was attempted oral copulation of a minor (§§ 664, 288a, subd. (b)(2)) and his placing of his penis against her buttocks and on her vagina was attempted sodomy and/or attempted rape, with the result each act was a "sexual offense" within the meaning of Evidence Code section 1108, subdivision (d)(1)(A) & (F). Similarly, the court reasonably could have concluded appellant's three acts of touching A.B.'s vagina in 2001 when she returned to California were lewd acts upon a child (§ 288, subd. (a)) and each was a "sexual offense" within the meaning of Evidence Code section 1108, subdivision (d)(1)(A). The uncharged sexual offense evidence was relevant circumstantial evidence appellant committed the present offenses. (*Falsetta, supra,* 21 Cal.4th at p. 920.)

Moreover, " 'With the enactment of section 1108, the Legislature "declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness." (Review of [Selected] 1995 Cal. Legislation [(1996)] 27 Pacific L.J. 761, 762.)' " (*People v. Callahan* (1999) 74 Cal.App.4th 356, 367.) All of the above proffered evidence was highly probative of appellant's willingness to commit sexual offenses and, further, sexual offenses against children. All of the above proffered evidence (other than the evidence appellant grabbed W.B.'s breast when she was about 16) was highly probative of appellant's willingness to commit sexual offenses against young children. All of the proffered evidence (other than the evidence pertaining to H.E.) was highly probative of appellant's willingness to commit sexual offenses against young female relatives. (Cf. *People v. Hernandez* (2011) 200 Cal.App.4th 953, 967.)

The offenses of which appellant was convicted represented a pattern of sexual offenses committed against children from April 1, 1995, through June 25, 2002, inclusive. The proffered evidence of appellant's sexual offense against W.B. when she

10

was between perhaps six and nine (i.e., between perhaps September 21, 1991 and September 21, 1994), was highly probative to show the pattern existed even earlier. The proffered evidence of appellant's sexual offenses against A.B. on September 12, 1999 (in Illinois) and in 2001 (in California, even after she, in Illinois, had reported him to police for similar misconduct), as well as the proffered evidence appellant grabbed W.B.'s breast in 2001 was highly probative to corroborate the existence of the pattern from April 1, 1995, through June 25, 2002. There were similarities between, on the one hand, each of the following categories, i.e., (1) some of appellant's uncharged misconduct towards W.B. (between perhaps September 21, 1991, and September 21, 1994), (2) some of his 1999 uncharged Illinois misconduct against A.B., and (3) his 2001 uncharged misconduct towards A.B., and, on the other hand, the offenses of which he was convicted in which A.B. and N.R. were victims.

The trial court reasonably could have concluded the proffered evidence would not necessitate undue consumption of time, create a substantial danger of undue prejudice, confuse issues, and/or mislead the jury. The fact no evidence may have been presented appellant had been convicted of the uncharged offenses may have increased the risk the jury would convict him to punish him for the prior acts. However, *Frazier, supra,* 89 Cal.App.4th 30, discussing a similar issue, observed, "A risk does exist a jury might punish the defendant for his uncharged crimes regardless of whether it considered him guilty of the charged offense . . . . This risk, however, is counterbalanced by instructions on reasonable doubt, the necessity of proof as to each of the elements of [the charged offense], and specifically that the jury 'must not convict the defendant of any crime with which he is not charged.' " (*Id.* at p. 42.)

Here too, the court instructed the jury on reasonable doubt and on the elements of the counts. Moreover, the court, using CALCRIM No. 2.50.01, instructed the jury to the effect the jury could consider uncharged sexual offenses as propensity evidence, but for no other purpose. The jury is presumed to have followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

11

In order to conclude a trial court abused its discretion, we must conclude the court's action was irrational, capricious, or patently absurd (cf. *People v. Delgado* (1992) 10 Cal.App.4th 1837, 1845; *In re Arthur C.* (1985) 176 Cal.App.3d 442, 446) and without even a fairly debatable justification (*People v. Clark* (1992) 3 Cal.4th 41, 111). We cannot conclude that here. The trial court did not abuse its discretion by failing to exclude the proffered evidence as irrelevant, inadmissible under Evidence Code section 1108, or excludable under Evidence Code section 352. Nor did the application of ordinary rules of evidence, as here, violate appellant's rights to due process and a fair trial.

Finally, the evidence of appellant's offenses, including the testimony of A.B., Green, N.R., H.E., and Ota provided strong independent evidence of appellant's guilt. Appellant admitted to Green that appellant committed sexual misconduct against A.B., and admitted to Ota that appellant committed sexual misconduct against A.B. and H.E. We note appellant states, "given appellant's post-arrest statement [to Ota], it is abundantly clear the prosecution did not need the uncharged sexual misconduct evidence involving [W.B. and A.B.]" The court, using CALCRIM No. 17.02, instructed the jury to decide each count separately. The fact the jury deadlocked on counts 4 and 7, involving victims K.R. and N.R., respectively, with the result the court declared a mistrial on those counts, suggests the jury was able to compartmentalize the evidence. (See *People v. Soper* (2009) 45 Cal.4th 759, 784.) Even if the trial court had not admitted the challenged evidence, it is not reasonably probable a different result would have occurred. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

2. *The Statute of Limitations Did Not Bar Prosecution of Count 8, and the One Strike Law Applied to All Counts.*

    a.  Pertinent Facts.

Count 8 of the information filed on May 6, 2013, alleged that "On or between December 1, 1994 and December 31, 1996," appellant committed upon H.E. the offense of lewd act upon a child in violation of section 288, subdivision (a) (hereafter, the sex offense).[7] As to count 8, the information "alleged, pursuant to Penal Code section 803(f), that the victim in the above offense is under 18 years of age and reported the offense to a responsible adult and agency on 05/24/11." The information "further alleged, within the meaning of Penal Code section 667.61[, former subdivision] (b), . . . as to counts [1 through 8] that the following circumstances apply: MULTIPLE VICTIMS."

On April 17, 2014, the court granted the People's pretrial motion to amend count 8 by interlineation to substitute "December 31, 1997" instead of "December 31, 1996" as the date ending the period during which appellant committed the sex offense. The jury convicted appellant as previously indicated. As to count 8, the jury made no finding as to the section 803, subdivision (f) allegation, but found true "the allegation pursuant to Penal Code Section 667.61, [former] subdivision (b), as to the defendant, that the following circumstances apply: MULTIPLE VICTIMS." The court found as to count 8, "that the named victim in that particular case was under 18 years of age at the time of the incident, and the offense was reported to a responsible agency on May 24, 2011, and that it meets the definition of Penal Code section 803(f)." We will present additional facts where appropriate.

---

[7]    Earlier, on May 29, 2012, a "second amended felony complaint for extradition" (capitalization omitted) was filed alleging (1) appellant committed violations of section 288, subdivision (a) against minors other than H.E. and (2) "[o]n or between December 1, 1994 and December 31, 1996," appellant committed such a violation against H.E. by playing with H.E.'s penis.

13

b. Analysis.

 (1) Count 8 was not subject to a statute of limitations.

  (a) *Section 799 permitted prosecution of count 8 at any time*.

Appellant claims prosecution of count 8 was time-barred.[8] We disagree. We conclude for the reasons discussed below that, pursuant to section 799, prosecution of the sex offense could commence at any time. In *People v. Perez* (2010) 182 Cal.App.4th 231 (*Perez*), a defendant convicted on three counts of forcible lewd act upon a child in violation of section 288, subdivision (b)(1) received a sentence of 15 years to *life* on each count pursuant to a One Strike law multiple victim allegation found true as to each count. (§ 667.61, former subds. (b), (c)(4), (e)(5)). (*Perez*, at pp. 234, 236-237.) The defendant claimed as to two counts (counts 1 & 4) that section 800's six-year statute of limitation (applicable when the maximum punishment for an offense, such as a violation of section 288, subdivision (a) (here) or subdivision (b) (in *Perez*) is eight years) barred prosecution of those counts. (*Perez*, at pp. 236-237.) *Perez* rejected the defendant's claim. (*Id.* at p. 234.)

*Perez* stated, "Section 667.61 is an alternate penalty scheme that, when charged, defines the length of imprisonment for the substantive offense of violating section 288, subdivision (b)(1). Thus, the unlimited timeframe for prosecution set out in section 799 for an offense 'punishable by death or by imprisonment in the state prison for *life* . . .' applies, given that defendant was found guilty of violating section 288, subdivision (b)(1) *and* 'in the present case or cases' (§ 667.61, [former] subd. (e)(5)) was found guilty of another such violation involving another victim (*ibid.*), and therefore was subject to the

---

**8** Appellant argues prosecution of count 8 was facially time-barred to the extent it alleged appellant committed the offense from December 1, 1994, through December 31, 1995, inclusive, because, according to appellant (1) that period was beyond the otherwise applicable statute of limitations period and (2) there was no tolling because the section 803, subdivision (f) tolling provision alleged in count 8 did not allege the offense involved "substantial sexual conduct" within the meaning of subdivision (f). (We note appellant relies on a version of subdivision (f) that was not in effect when appellant committed the offense alleged in count 8.) However, there is no need to decide these issues.

14

*life*-term sentencing provision contained in section 667.61, [former] subdivision (b)." (*Perez, supra,* 182 Cal.App.4th at pp. 239-240, second italics added.)

In the present case, the information "alleged, within the meaning of Penal Code section 667.61[, former subdivision] (b), as to [inter alia, count 8] . . . that the following circumstances apply:  MULTIPLE VICTIMS."  The jury found true the section 667.61, former subdivision (e)(5) multiple victim allegation as to count 8, and, on that count, the court sentenced appellant to prison for 15 years to life pursuant to section 667.61, former subdivisions (b), (c)(7), and (e)(5) of the One Strike law.  We hold section 799 applied to count 8 with the result prosecution on that count could commence at any time; no statute of limitations applied to that count.  (Cf. *Perez*, *supra,* 182 Cal.App.4th at pp. 234, 236-237, 242; see *Anthony v. Superior Court* (2010) 188 Cal.App.4th 700, 718; §§ 667.61, former subds. (b), (c)(7) & (e)(5), 799.)

(b)  *None of appellant's arguments compels a contrary conclusion.*

Appellant argues section 799 does not apply to count 8 because the People must plead and prove he does not "qualif[y] for probation under [section 1203.066, former subdivision (c)]" within the meaning of section 667.61, former subdivision (c)(7).  At all times from December 1, 1994, through December 31, 1997, section 667.61, former subdivision (c)(7) provided, "(c)  This section shall apply to any of the following offenses:  [¶] . . . [¶]  (7)  A violation of subdivision (a) of Section 288, *unless the defendant qualifies for probation under* [former] *subdivision (c) of Section* 1203.066." (Italics added.)

There is no dispute the jury convicted appellant on count 8 of "a violation of subdivision (a) of Section 288" within the meaning of section 667.61, former subdivision (c)(7).  Appellant concedes the People alleged, and the jury found true, the section 667.61, former subdivision (e)(5) multiple victim allegation as to that count. Appellant does not even dispute he was ineligible for probation under section 1203.066.

*People v. Woodward* (2011) 196 Cal.App.4th 1143 (*Woodward*) rejected the argument the People have to *plead* a defendant did not qualify for probation under section 1203.066.  In *Woodward*, a jury convicted the defendant on two counts of

15

violating section 288, subdivision (a) and found true a section 667.61, former subdivision (e)(5) multiple victim allegation. (*Woodward*, at pp. 1145-1146.) The court sentenced the defendant on each count pursuant to the One Strike law. (*Id.* at p. 1146.) The defendant argued on appeal "the application of the One Strike Law set forth in former subdivision (i)[9] of section 667.61 requires the pleading to allege that defendant is ineligible for probation as set forth in former section 1203.066." (*Woodward*, at p. 1149.)

*Woodward* rejected the argument (*Woodward, supra,* 196 Cal.App.4th, at p. 1149) and later stated, "Defendant asks us to impose a rule of pleading that would require the prosecution plead the absence of a fact that might *decrease* the penalty sought. We decline to do so. [¶] Any fact serving to *increase* the penalty must be pled." (*Id.* at p. 1152, italics added.) *Woodward* later stated, "The converse is not true. The prosecution need not allege the absence of a factor, such as eligibility for probation, that may lighten the punishment on defendant. (See [*In re Varnell* (2003) 30 Cal.4th 1132] at pp. 1132, 1141 [rejecting contention that 'a defendant is entitled as a matter of due process to notice in the accusatory pleading of his ineligibility for less restrictive alternate punishments' such as probation].) Probation eligibility does not represent the sort of increase in penalty that the Supreme Court has required to be pled. (*Id.* at p. 1140.) As this court has noted, '[f]inding a defendant ineligible for probation is not a form of punishment, because probation itself is an act of clemency on the part of the trial court.' [Citation.] . . . ." (*Woodward*, at p. 1152.)

"Here, the prosecution satisfied the One Strike pleading requirement by alleging its applicability due to defendant's commission of qualifying offenses against multiple victims. (§ 667.61, former subd. (e)(5).) Section 667.61 does not require that the People also allege the inapplicability of a circumstance that might remove defendant from the

---

**9** In *Woodward*, and when appellant committed the present offenses, the pertinent version of section 667.61, former subdivision (i), stated, "For the penalties provided in this section to apply, the existence of any fact required under subdivision . . . (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

16

statutory scheme's penalty provisions." (*Woodward, supra,* 196 Cal.App.4th at p. 1152.)[10]

People v. Benitez (2005) 127 Cal.App.4th 1274 (*Benitez*) rejected, in the context of a constitutional claim, appellant's argument the People had to *prove* appellant did not qualify for probation under section 1203.066. In *Benitez*, a jury convicted the defendant on multiple counts of violating section 288, subdivision (a) and found true a section 667.61, former subdivision (e)(5) multiple victim allegation. (*Benitez*, at pp. 1276-1277.) The defendant's sentence included a sentence pursuant to the One Strike law. (*Id.* at pp. 1276-1277.)[11] The defendant argued on appeal the People's failure to prove he did not qualify for probation under section 1203.066 violated his constitutional right to a jury determination of every necessary fact. (*Benitez*, at pp. 1276-1277.) *Benitez* rejected the argument. (*Id.* at p. 1276.)

*Benitez* observed, "Contrary to defendant's contention, we find that the proviso in Penal Code section 667.61, [former] subdivision (c)(7) (that a defendant is unqualified for probation) *is not an element of the enhancement to be negated [by the People] upon proof to a jury. Rather, it is a legislative grant of authority to the trial court to entertain a request for probation* (should a defendant satisfy the criteria in section 1203.066, [former] subd. (c)) *despite eligibility otherwise for sentencing under section 667.61. . . .* [¶] . . . Because a defendant's eligibility for probation results in a *reduction* rather than an increase in the sentence prescribed for his offenses, it is not subject to the rule of [*Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403]]. [Citations.] As a

---

**10** Like appellant, the defendant in *Woodward* cited *People v. Hammer* (2003) 30 Cal.4th 756, and *People v. Mancebo* (2002) 27 Cal.4th 735, in support of the defendant's argument. *Woodward* rejected the defendant's reliance on those cases. (*Woodward, supra,* 196 Cal.App.4th at pp. 1150-1152.)

**11** The *Benitez* court referred to the One Strike law sentence as an "enhancement." (*Benitez, supra,* 127 Cal.App.4th at p. 1276.) However, "the One Strike law is not, . . . a sentence enhancement." (*People v. Acosta* (2002) 29 Cal.4th 105, 118 [describing law's term of 25 years to life as an " '*alternate* penalty for the underlying felony itself' "].)

result, the enhancement of his molestation convictions did not offend his constitutional rights." (*Benitez, supra,* 127 Cal.App.4th at p. 1278, first and second italics added.)[12]

*Woodward* too supports a conclusion the People have no burden to prove appellant's ineligibility for probation. *Woodward* stated, "Rather than being a burden on the prosecution to disprove, any eligibility for probation must be shown *by the defendant.* '[A] defendant has the burden to present evidence showing that he is entitled to consideration for probation under [former] subdivision (c) of section 1203.066.' [Citation.]" (*Woodward, supra,* 196 Cal.App.4th at p. 1152.)

We hold the People were not required to plead or prove appellant did not "qualif[y] for probation under [former] subdivision (c) of Section 1203.066" within the meaning of section 667.61, former subdivision (c)(7).

*Benitez* teaches that after a defendant has been convicted of a violation of section 288, subdivision (a) with a true finding as to a One Strike law multiple victim allegation, the court, at the time of disposition, may entertain—under the legislative authority granted by the phrase "qualifies for probation under [former] subdivision (c) of Section 1203.066" in section 667.61, former subdivision (c)(7)—a request for probation as an alternative to the otherwise applicable One Strike law sentencing, assuming the defendant satisfies the criteria specified in section 1203.066. In other words, the issue to which the above quoted language pertains arises at a probation and sentencing hearing when a defendant requests probation. In light of this, even if the People were required to plead as to count 8 that appellant did not "qualif[y] for probation under [former] subdivision (c) of Section 1203.066," it does not follow we must reverse the judgment as to that count.

First, at all times from December 1, 1994, through December 31, 1997, inclusive, section 1203.066 was materially the same (and hereafter we refer to that version of the section). Appellant's jury conviction on count 8 and true finding as to the section 667.61,

---

[12]    Jury consideration of whether appellant qualified for probation would run afoul of the principle (reflected in CALCRIM No. 17.42 given to the jury) that a jury is not to consider or discuss the subject of penalty or punishment.

18

former subdivision (e)(5) multiple victim allegation satisfied the requirements of section 1203.066, subdivision (a)(7) and former subdivision (d), with the result the trial court was, by section 1203.066, subdivision (a), *precluded as a matter of law* from granting probation unless the court made all of the findings specified in section 1203.066, former subdivision (c). *The trial court did not make any of those findings.*

Second, at the June 5, 2014 sentencing hearing, after the court discussed the One Strike law, the prosecutor indicated that at the time of appellant's offenses, "for a 288 finding, it has to be unless the person is eligible for probation . . . under 1203.066." The prosecutor indicated (1) why the court should not grant probation, (2) the One Strike law indicated the court should make findings, and (3) the prosecutor wanted the court to make a finding. The court stated, "I will find that . . . he's ineligible to be on probation." After the court sentenced appellant to prison, the prosecutor asked the court if it needed to make specific findings "as to the prior allegations." (The information alleged appellant had suffered two prior convictions for purposes of section 1203, subdivision (e)(4).) The court replied, "The court can't make that because he's not eligible for probation because of the two prior convictions."

Later, the following occurred: "[The Prosecutor]: Want to put one more thing on the record to make it clear. [¶] The court is not only finding that he's ineligible for probation under the 1203. -- 1203.4 [*sic*], but also is the court finding that under the statute ever [*sic*] 667.61, [former] *subdivision (c), that he was ineligible for probation under 1203.066*? [¶] The Court: *He's ineligible, yes*." (Italics added.)

Third, when the sentencing hearing occurred, H.E. was 24 years old. With slight modification, what the court said in *People v. Wills* (2008) 160 Cal.App.4th 728 (*Wills*), is equally applicable here: "We . . . conclude the plain language of former section 1203.066[, subdivision] (c)(2) evinces the Legislature's intent that a sentencing court shall have no authority, and thus no legal discretion, to grant probation to a defendant against whom a true finding under section 1203.066, subdivision (a)[(7)] has been properly made in a case in which the molestation victim is no longer a child at time of sentencing. We thus also conclude the court did not err to the extent it denied [appellant]

a grant of probation without expressly considering whether a grant of probation would have been in [H.E.'s] best interests at the time [appellant] molested [H.E. between December 1, 1994, through December 31, 1997, inclusive]." (*Wills,* at p. 740.)

For each of the above reasons, any erroneous prosecutorial failure to allege as to count 8 that appellant did not "qualif[y] for probation under [former] subdivision (c) of Section 1203.066" within the meaning of section 667.61, former subdivision (c)(7) was not prejudicial. (Cf. *Watson, supra,* 46 Cal.2d at p. 836; *Woodward, supra,* 196 Cal.App.4th at p. 1153.)[13]

(2) The One Strike Law applied to all counts.

Appellant presents the related claim that, because the People failed to plead and prove he did not "qualif[y] for probation under [former] subdivision (c) of Section 1203.066" within the meaning of section 667.61, former subdivision (c)(7), the One Strike law did not apply to any counts of which he was convicted. We reject the claim as to each count based on the above analysis there was no such pleading or proof requirement and the alleged pleading defect was not prejudicial.[14]

---

[13] As mentioned, appellant does not dispute he was ineligible for probation under section 1203.066. Nor does he contend the trial court erred by refusing to grant probation.

[14] Appellant maintains the language of the current One Strike law is adverse to his argument but also maintains application of the current One Strike law would violate ex post facto principles. There is no need to reach that issue because our analysis does not rely on the current One Strike law.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HOGUE, J.[*]

We concur:

EDMON, P. J.

ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.