Filed 5/27/22  P. v. Lenz CA3
Opinion after recalling remittitur

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C087887 |
| v. | (Super. Ct. No. 62147527) |
| JEREMY JAMES LENZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Jeremy James Lenz of continuous sexual abuse, assault, forcible rape, and lewd and lascivious acts upon a child.  The trial court sentenced defendant to an aggregate prison term of 57 years eight months, consisting of upper terms on counts one to six.  In his opening brief on appeal, defendant argued (1) the trial court erred in admitting evidence of six pornographic video titles defendant had viewed; (2) the prosecutor committed prejudicial misconduct during closing argument by arguing facts not in evidence and improperly describing the use of Child Sexual Abuse Accommodation Syndrome (CSAAS) evidence; and (3) the trial court's CALCRIM No. 375 [evidence of uncharged offense] instruction to the jury was

1

erroneous. In supplemental briefing following a recall of the remittitur, defendant argued (4) Senate Bill No. 567 (2021-2022 Reg. Sess.), which amended Penal Code section 1170,[1] retroactively applies to his case and requires modification of his upper-term sentences. Although many of defendant's claims are forfeited or do not establish prejudicial error, we will remand the matter to the trial court for resentencing in a manner consistent with the amendments to Penal Code section 1170.

## BACKGROUND

K. lived with defendant (her father) and also with her mother, her two younger brothers Ka. and J., and at some point, an older half-brother. At the beginning of K.'s seventh-grade school year, defendant touched K.'s breasts, vagina and buttocks under her clothes. K. was 13 years old. After that incident, every week during K.'s seventh- and eighth-grade school years, defendant touched K.'s breasts under her clothes and masturbated while the two lay in K.'s bed. Defendant's ejaculate went on K.'s leg and bed. In the middle of her eighth-grade school year, defendant put K.'s hand on his penis. When K. resisted, defendant got on top of K. and tried to open her mouth and put his penis in her mouth. Defendant then put his penis in K.'s vagina. K. felt wetness on her leg and vagina when defendant stopped. At the beginning of K.'s freshman year in high school, defendant ripped off K.'s clothes, touched K.'s vagina with his hand and forced his penis in her vagina, hurting her. All of the incidents occurred in K.'s bedroom in the early morning hours.

In addition, K. testified about incidents of physical abuse by defendant. She said defendant hit her arm, slapped her face, choked and punched her, and slammed her against a wall. Defendant also hit and choked Ka. and J.

---

[1] Undesignated statutory references are to the Penal Code.

2

K. told her friend K.M. that defendant was violent and abused her nightly or every other night when K. was in seventh or eighth grade. When the two were freshmen in high school, K. told K.M. that defendant did "stuff." Ultimately, K. told a guidance counselor that defendant was sexually abusing her. K. told the guidance counselor that defendant entered her room at night and touched her, and that defendant had sex with her. K. reported that the abuse started when she was in seventh grade and continued through the month before her disclosure.

Ka. testified that he did not see defendant do anything sexual to K., but defendant choked K. one time and defendant grabbed Ka.'s throat, threw him on the ground and hit him in the ribs and chest once.

Semen and sperm were found on K.'s mattress. The semen matched defendant's DNA profile.

A non-acute pediatric sexual abuse evidence exam of K. showed normal results, meaning K. had no bruises or abrasions and there was no evidence of any healed injury to her anus and genital areas. A non-acute exam is an exam conducted more than three days after the alleged abuse. Dr. Angela Vickers testified that 90 percent of non-acute exams showed normal results and with teenagers, probably 100 percent of the time the alleged victim would have a normal exam two to three weeks after a sexual contact.

Placer County District Attorney's Office investigator Christina Woo conducted a forensic examination of defendant's cell phone. The cell phone's memory allowed Woo to obtain data only from the three-month period prior to her examination. Woo testified that defendant's cell phone was used to access 179 videos from a pornography website called xnxx.com. That website displayed thumbnails or still images with titles under them and a user clicked on a thumbnail to watch a video. Of the 179 videos accessed on defendant's cell phone, about 46 related to family-related sex, 29 mentioned the words "teen" or "young," and about 10 related to father/stepfather and daughter/stepdaughter sex. Woo watched the beginning of those 10 videos and said they showed persons

3

playing the roles of a father/stepfather and a daughter/stepdaughter. None of the videos depicted child pornography and none of the videos were played at the trial.

Dr. Anthony Urquiza testified as an expert on CSAAS. He explained that CSAAS was not used to opine whether a child had actually been molested and he was not testifying about whether someone had been sexually abused or not. Rather, the purpose of CSAAS was to educate the jury about what commonly occurred when a child was molested. Dr. Urquiza discussed common myths about child sexual abuse, including that a child disclosed right away or disclosed in a clear and logical manner.

Defendant testified at the trial. He denied having sex with K., grabbing her buttocks or vagina, masturbating around her when she was in bed, forcing her to masturbate him or have oral sex with him or ever doing anything sexual to her. He denied ever choking, punching or slapping K. or throwing her against a wall. He also denied choking or punching Ka.

Defendant denied ever masturbating on K.'s bed. He said he masturbated in the bathroom while watching pornography on his cell phone, and on about eight or nine occasions, he took a nap on K.'s bed after masturbating. According to defendant, the semen on K.'s mattress must have been his post ejaculation. However, defendant told a detective there was no reason his semen would be on K.'s mattress and did not report that he took a nap on K.'s bed after masturbating in the bathroom.

Defendant admitted going on the xnxx.com website at least twice a week to watch pornography on his cell phone. He said he picked the videos he watched based on whether the picture of the girl was pretty or hot, and did not look at the titles of the videos. He denied searching for videos that featured teens, daughters or incest. He explained that the videos that said "daddy/daughter" did not involve a father and daughter; they showed an older man with a younger girl. But he denied having a fetish about sex between an older man and a younger girl.

4

The jury convicted defendant of continuous sexual abuse of K. when she was in seventh grade (§ 288.5, subd. (a) -- count one), assault with intent to commit a violation of section 288, subdivision (c) (§ 220, subd. (a)(2) -- counts two (eighth grade when he attempted to put K.'s hand on his penis), three (eighth grade when he attempted to put K's mouth on his penis) and five (ninth grade when he ripped off K.'s clothes with the intent of committing a violation of section 288)), forcible rape (§ 261, subd. (a)(2) -- count four) and lewd and lascivious acts upon the body of K. with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of defendant, who was at least 10 years older than K. (§ 288, subd. (c)(1) -- counts six (ninth grade when defendant touched K.'s vagina) and seven (ninth grade when defendant had sex with K.)). The trial court imposed an aggregate sentence of 57 years eight months in prison.

DISCUSSION

I

Defendant contends the trial court erred in admitting evidence of six pornographic video titles defendant had viewed.

A

We begin with some additional background information. The People filed an in limine motion, pursuant to Evidence Code section 1101, subdivision (b), to admit evidence of the titles of 46 pornographic videos that defendant watched during the three-month period prior to his arrest for the charged offenses, when defendant was allegedly molesting and raping his daughter. The prosecutor argued that the evidence was admissible to show intent, motive and absence of mistake. With regard to intent, the prosecutor urged that the titles of the videos tended to show that when he committed the charged offenses defendant intended to arouse, appeal to and gratify his own lust, passions and sexual desires. The prosecutor sought to admit only the titles of the videos and did not seek to play the videos at trial or have a witness describe the content of the videos.

5

Defendant moved in limine to exclude evidence of father-daughter pornography on the grounds that such evidence was irrelevant, there was no evidence linking the watching of legal pornography to the charged acts, the evidence was improper propensity evidence, and it was inadmissible under Evidence Code section 352. Defendant's trial counsel argued that the videos were from lawful websites and did not contain child pornography. He said showing the jury the titles of the videos would be prejudicial because the jury would assume the actor was a stepfather and the actress was his daughter. He said, "there's all these things that are showing the idea that these are potentially real people." He argued that the jury should watch the videos to understand that "it's just pornography where it's maybe a younger person and an older person in a fake scenario with all lawful performers doing lawful pornography;" but before videos were played at the trial, the trial judge had to review the videos to decide whether it was proper to admit the videos. Defendant's trial counsel said the jury should watch the videos "because the titles themselves are descriptive of something that sounds worse than what the videos might be. It's -- it's not like these videos are acted-out scenes in the sense of everybody has got a role and they have got to develop character. It's just porn, people doing porn, and I think the titles actually make it seem worse."

The People agreed the videos were legal pornography and did not constitute child pornography. The prosecutor said the girls in the videos were dressed like and appeared to be minors. She argued that admitting the titles of the videos would be less prejudicial than showing the videos. With regard to intent, the prosecutor pointed out that defendant watched the videos at the time the charged offenses were occurring and the charged offenses were specific intent crimes. The prosecutor asked the trial court to admit the titles of 10 videos specifically related to father-daughter incest pornography.

The trial court granted the People's motion in part. It ruled evidence that defendant accessed pornographic videos with titles indicating sexual acts between fathers and daughters, during the same time period of the alleged molestations, was highly

6

relevant to show defendant's "sexual intent" but was inadmissible to prove motive or absence of mistake. It further concluded that the probative value of the evidence was not substantially outweighed by the risk of undue prejudice. The trial court admitted evidence that defendant accessed videos titled (1) "Daddy fuck me hard in my innocent ass;" (2) "Daughter fucks daddy for father's day;" (3) "Dad fucks daughter after party insanely hot tomi taylor;" (4) "Cock ninja studios grounded daughter gives dad a blowjob;" (5) "Step dad fucks daughter and her friends;" and (6) "Hey man please don't fuck my daughter ok." The trial court excluded evidence of other videos.

B

Citing *Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234 [152 L.Ed.2d 403] and *Dawson v. Delaware* (1992) 503 U.S. 159 [117 L.Ed.2d 309], defendant now argues the admission of the video-title evidence violated his First Amendment right to free speech. But defendant did not preserve his First Amendment claim for review because he did not raise it in the trial court. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104, fn. 14 (*McCurdy*); *People v. Memro* (1995) 11 Cal.4th 786, 865 (*Memro*), abrogated on a different ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 639, fn. 18.)

C

Defendant further claims the video-title evidence was erroneously admitted because intent was undisputed and the evidence was not sufficiently similar to the charged offenses to prove intent.

Evidence of a defendant's character or character trait is inadmissible to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) However, evidence that the defendant committed an uncharged act may be admitted when relevant to prove a material fact at issue in the case, such as intent. (Evid. Code, § 1101, subd. (b); *People v. Fayed* (2020) 9 Cal.5th 147, 191.) The admissibility of uncharged act evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged acts to prove those facts, and (3) the existence of any rule or

7

policy requiring exclusion of the evidence, such as Evidence Code section 352. (*People v. Sanchez* (2016) 63 Cal.4th 411, 452; *People v. Leon* (2015) 61 Cal.4th 569, 597-598 (*Leon*).) We review the trial court's admission of evidence under Evidence Code section 1101, subdivision (b) for abuse of discretion. (*People v. Thompson* (2016) 1 Cal.5th 1043, 1114.)

The People had to prove that defendant acted with the intent of "arousing, appealing to, or gratifying the lust, passions, or sexual desires" of defendant or K. (§ 288, subd. (a), see *id.* at subd. (c).) Defendant's not-guilty plea placed all of the elements of the charged offenses, including his intent, in dispute. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822; *People v. Cowan* (2010) 50 Cal.4th 401, 476.) Defendant does not provide us with a citation to the record showing that his intent was not at issue. (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743.)

"The relevance [of uncharged act evidence] depends, in part, on whether the act is sufficiently similar to the current charges to support a rational inference of intent . . . ." (*Leon, supra*, 61 Cal.4th at p. 598.) "[T]he 'least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.' " (*People v. Molano* (2019) 7 Cal.5th 620, 665.) Moreover, evidence that a defendant possessed or accessed sexually explicit material has been found relevant to the defendant's intent in cases involving sexual offenses. (See *Memro, supra*, 11 Cal.4th at pp. 811, 814, 864-865; *McCurdy, supra*, 59 Cal.4th at pp. 1100, 1102; *People v. Avila* (2014) 59 Cal.4th 496, 499, 503, 518-519 (*Avila*); see also *People v. Fulcher* (2006) 136 Cal.App.4th 41, 45, 57-58; *People v. Yovanov* (1999) 69 Cal.App.4th 392, 396, 404-405; *United States v. Curtin* (9th Cir. 2007) 489 F.3d 935, 938-939, 948-950 (*Curtin*).)

Here, the trial court did not abuse its discretion in finding that the challenged videos were probative of defendant's intent when he committed the charged acts upon

his daughter. (*Memro, supra*, 11 Cal.4th at pp. 864-865; *McCurdy, supra*, 59 Cal.4th at pp. 1100, 1102; *Avila, supra*, 59 Cal.4th at pp. 518-519.)

D

Defendant next argues the video-title evidence was inadmissible under Evidence Code section 352 because it was cumulative, had limited (if any) probative value to prove intent, and was outweighed by its highly prejudicial effect. We disagree. The evidence was clearly probative as to defendant's intent, there is no indication it caused confusion or misled the jury, and it was not unduly prejudicial in light of the charged conduct. Additionally, the trial court instructed the jury that it could consider the pornography evidence only for the purpose of determining whether defendant acted with the intent to arouse, appeal to or gratify his lust, passions or sexual desires. (*Leon, supra*, 61 Cal.4th at pp. 599-600.) The trial court told the jury the pornography evidence by itself was insufficient to prove that defendant was guilty of the charged crimes and the People had to prove the charged offenses beyond a reasonable doubt. We presume the jurors followed the trial court's instructions and did not consider the pornography evidence for an improper purpose. (*People v. Scott* (2015) 61 Cal.4th 363, 399; *McCurdy, supra*, 59 Cal.4th at p. 1096.) The prosecutor's closing argument remarks about the pornography evidence were consistent with the trial court's instruction on the limited use of that evidence. In any event, based on the strong evidence of guilt in this case, including the evidence of defendant's semen on K.'s bed and the other corroborating evidence, it is not reasonably probable that defendant would have received a more favorable outcome absent the admission of the pornography evidence. (See *McCurdy,* at p. 1103.)

E

In addition, defendant argues the trial court erred in not reviewing the six videos whose titles it admitted into evidence for purposes of determining whether the probative

9

value of the video-title evidence substantially outweighed any prejudice in its admission. There was no error.

The People did not propose to show the videos and the videos were not shown at the trial. The prosecutor sought to admit only the titles of certain videos and the record indicates the trial court reviewed those titles in making its ruling.

Defendant's trial counsel was concerned that the jury might think the videos depicted actual fathers and daughters, as opposed to "a fake scenario." He argued that the jury should watch the videos to understand it was "just porn" because the titles were "descriptive of something that sounds worse than what the videos might be." But he did not claim that any of the titles the prosecutor sought to admit did not accurately describe the "fake scenario" in the video. And he did not ask the trial court to watch any video to determine the accuracy of its title.

*Curtin, supra*, 489 F.3d 935, a case upon which defendant relies, is inapposite because in that case the trial court did not read all of the lewd stories it subsequently admitted into evidence. (*Id.* at p. 956-958.) Here, however, the prosecutor presented the trial court with the titles of 10 pornographic videos, and nothing in the record indicates the trial court did not review those video titles before ruling on their admissibility.

## II

Defendant next claims the prosecutor committed prejudicial misconduct during closing argument by (A) arguing facts not in evidence, and (B) improperly describing the use of CSAAS evidence. We address each contention in turn.

## A

During the prosecutor's closing argument, the prosecutor argued, "How about the pornography? Oh, they're just random titles. They just popped up. Right? He was just looking for pretty girls. Interestingly enough, pornography sites don't always have pictures of people's faces on them. They just have pictures of genitalia." Defendant appears to argue that the last two sentences involved facts not in evidence.

10

To preserve a claim of prosecutorial misconduct for appeal, defendant must make a timely objection at trial on the ground raised on appeal and request that the jury be admonished to disregard the impropriety. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894 (*Covarrubias*).) " 'The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the [trial] court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeating improprieties, thus avoiding the necessity of a retrial.' " (*People v. Brown* (2003) 31 Cal.4th 518, 553.) Although the failure to timely object and/or request an admonition will be excused if either would be futile, if an admonition would not cure the harm caused by the misconduct or if the trial court immediately overrules an objection and as a consequence the defendant has no opportunity to request an admonition, a defendant claiming that an excuse applies must find support for the exception in the record. (*People v. Panah* (2005) 35 Cal.4th 395, 462 (*Panah*); *People v. Hill* (1998) 17 Cal.4th 800, 820-821; see *People v. Williams* (1997) 16 Cal.4th 153, 255.)

Defendant did not object to the prosecutor's remark that he challenges on appeal nor request an admonition. And he fails to demonstrate that any of the exceptions apply. His claim of prosecutorial misconduct is, thus, forfeited. (*People v. Riggs* (2008) 44 Cal.4th 248, 298 (*Riggs*); *Panah, supra*, 35 Cal.4th at p. 462.)

Defendant says his claim is cognizable even though he did not object in the trial court because his constitutional rights are implicated. But even if defendant had not forfeited his claim, the prosecutor's brief remark was not prejudicial. (*People v. Perez* (2018) 4 Cal.5th 421, 451 [the defendant must demonstrate that the prosecutor's statement caused prejudice]; *People v. Bolton* (1979) 23 Cal.3d 208, 214 [in the absence of prejudice to the fairness of a trial, prosecutorial misconduct does not require reversal].) The evidence undermining defendant's credibility was compelling, including defendant's semen on K.'s mattress and the other evidence corroborating K.'s testimony. In addition, defendant's trial counsel pointed out to the jury in his closing statement that there was no

11

evidence that some porn sites did not show pictures and only showed genitalia. He reminded the jury that the only evidence regarding pornography came from Woo and defendant and there was no evidence about images of genitalia. The prosecutor did not mention her erroneous assertion in her rebuttal statement. Further, the trial court instructed the jury that it must decide what the facts were based only on the evidence. "[A]rguments of counsel 'generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.' " (*People v. Mendoza* (2007) 42 Cal.4th 686, 703.)

We are convinced from our review of the record that the error committed by the prosecutor was harmless under any standard. (*People v. Crew* (2003) 31 Cal.4th 822, 839 [considering brief nature of the prosecutor's misstatement, the evidence against the defendant and the trial court's cautionary instruction in finding no possible prejudice].)

B

Defendant also contends the prosecutor improperly described the use of CSAAS evidence.

In her rebuttal statement to the jury, the prosecutor argued the jury could tell K. was truthful because when K. testified to the crimes, she did not know that her version of events would be corroborated in so many ways. Among other things, the prosecutor said, "[K.] never knew about Dr. Urquiza. She never knew that there was this man out there who can explain common behavior patterns of people that have been molested."

Defendant's trial counsel did not object to the prosecutor's statements and does not demonstrate an exception to the rule requiring timely objection and a request for an admonition. A ritual incantation that an admonition would not have cured the harm caused by the prosecutor's misconduct is not enough. (*Panah, supra*, 35 Cal.4th at p. 462.) Consequently, defendant's claim of prosecutorial misconduct is forfeited.

12

(*Riggs, supra*, 44 Cal.4th at p. 298; *Panah,* at p. 462.) But defendant's claim lacks merit in any event. The prosecutor did not say that Dr. Urquiza's testimony proved that K. had been molested. The prosecutor's remarks were consistent with the trial court's instruction to the jury that the jury may consider Dr. Urquiza's testimony about CSAAS in evaluating K.'s credibility. CSAAS testimony is admissible to rehabilitate a witness's credibility when, as here, the defendant suggested that the witness's conduct was inconsistent with her claim of sex abuse. (*People v. Perez* (2010) 182 Cal.App.4th 231, 245; *People v. Bowker* (1988) 203 Cal.App.3d 385, 394.) The trial court told the jury that Dr. Urquiza's testimony was not evidence that defendant committed any of the charged offenses. Defendant does not challenge the trial court's instruction regarding the use of Dr. Urquiza's testimony.

" 'In evaluating a claim of prejudicial misconduct based upon a prosecutor's comments to the jury, we decide whether there is a reasonable possibility that the jury construed or applied the prosecutor's comments in an objectionable manner.' " (*People v. Valdez* (2004) 32 Cal.4th 73, 132-133.) We consider the challenged comment in the context of the argument as a whole and " ' "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Covarrubias, supra*, 1 Cal.5th at p. 894.) Having done so, we conclude that the prosecutor's comment about Dr. Urquiza's testimony was not misconduct.

III

Defendant further argues the trial court's CALCRIM No. 375 [evidence of uncharged offense] instruction to the jury was erroneous.

When uncharged act evidence is admitted under Evidence Code section 1101, subdivision (b), upon request, the trial court must instruct the jury on the limited purpose of considering that evidence. (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1177.) Here, the trial court instructed the jury pursuant to CALCRIM No. 375 as follows: "The People presented evidence of other behavior by the defendant that was not charged in this

13

case, viewing pornography related to incest. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the act. [¶] Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely. If you decide that the defendant committed the act, you may but are not required to consider that evidence for the limited purpose of deciding whether the defendant acted with the intent to arouse, appeal to or gratify the lust, passions or sexual desires for himself. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged act and the charged offenses. Do not consider this evidence for any other purpose except for the limited purpose -- purpose of intent. [¶] If you conclude that the defendant committed the act, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crimes. The People must still prove every charge beyond a reasonable doubt."

Defendant did not object to the CALCRIM No. 375 instruction nor request any modification to the instruction. Accordingly, the Attorney General asserts that defendant's instructional error claims are forfeited. As a general rule, failure to object to an instruction at trial forfeits the issue on appeal. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 498 (*Campbell*).)

Anticipating the Attorney General's claim of forfeiture, defendant summarily asserts that his claims of instructional error are cognizable. The rule of forfeiture does not apply if the instruction affected the defendant's substantial rights. (§ 1259; *Campbell, supra*, 51 Cal.App.5th at p. 499.) A "[d]efendant's substantial rights are affected if the instruction results in a miscarriage of justice, making it reasonably probable that absent the erroneous instruction defendant would have obtained a more favorable result." (*Campbell,* at p. 499.) We reject defendant's assertion against

14

forfeiture, however, because it was made in a perfunctory manner and without supporting argument.  (*People v. Jones* (1998) 17 Cal.4th 279, 304.)

IV

In supplemental briefing, defendant contends Senate Bill No. 567 retroactively applies to his case and requires his sentences on counts one through six to be modified.

Effective January 1, 2022, pursuant to Senate Bill No. 567, when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the trial court must impose a term not exceeding the middle term unless there are circumstances in aggravation of the crime that justify the imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances (1) have been stipulated to by the defendant or (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial or (3) relate to the defendant's prior convictions and are based on a certified record of conviction.  (§ 1170, subds. (b)(1), (b)(2), (b)(3); Stats. 2021, ch. 731, Legis. Counsel's Digest.)

Under *In re Estrada* (1965) 63 Cal.2d 740, " ' "[a]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date" [citation], unless the enacting body "clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." ' " (*People v. Lara* (2019) 6 Cal.5th 1128, 1134.)  A judgment of conviction is not final for the purpose of determining the retroactive application of a statutory amendment until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed.  (*People v. Vieira* (2005) 35 Cal.4th 264, 305-306; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)  Nothing in Senate Bill No. 567 suggests a legislative intent that its amendments apply prospectively only, and the parties correctly agree that defendant is entitled to the benefits of the legislative enactments in Senate Bill No. 567.  (Stats. 2021, ch. 731, §§ 1-3; *Flores,* at p. 1039.)

15

The trial court imposed upper term sentences on counts one through six. It considered the following facts in aggravation when it selected the upper term for those counts: (1) that the crime involved a high degree of cruelty and callousness, (2) K. was particularly vulnerable, and (3) defendant took advantage of a position of trust. In mitigation as to counts one through six, the trial court considered that defendant had an insignificant record of criminal conduct. It recited the trial evidence supporting counts one through six in selecting the upper-term sentences.

The People do not dispute that the facts underlying the circumstances in aggravation recited by the trial court were not stipulated to by defendant and were not found true beyond a reasonable doubt by the jury, as required by the newly amended section 1170, subdivision (b). But they contend harmless error analysis applies to the lack of a defense stipulation and jury finding in support of the aggravating circumstances applied to impose the upper-term sentences and it is clear beyond a reasonable doubt that the jury would have found all of the aggravating circumstances the trial court relied on to be true had the jury been asked to make such findings. Defendant argues that harmless error analysis does not apply but if harmless error analysis applies, the error in imposing upper terms was not harmless.

Although at least one court has applied a harmless error analysis to a challenge under Senate Bill No. 567 (*People v. Flores* (2022) 75 Cal.App.5th 495, 500-501), and it may seem intuitive in this case that the victim was particularly vulnerable and that defendant took advantage of a position of trust, we are also mindful of the California Supreme Court's caution that some aggravating circumstances described in the rules, such as whether the victim was particularly vulnerable, require an imprecise comparative evaluation of the facts. (*People v. Sandoval* (2007) 41 Cal.4th 825, 840.) Under the circumstances, we will remand the matter to the trial court for resentencing in a manner consistent with the amendments to section 1170.

## DISPOSITION

The matter is remanded to the trial court for resentencing in a manner consistent with the amendments to section 1170.  The judgment is otherwise affirmed.

| |
|---|
| /S/ |
| MAURO, J. |

We concur:

| |
|---|
| /S/ |
| BLEASE, Acting P. J. |

| |
|---|
| /S/ |
| DUARTE, J. |